419 So.2d 822 (1982)
Dan THOMPSON
v.
TELEDYNE MOVIBLE OFFSHORE, INC., et al.
No. 82 C 0339.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
Robert L. Beck, Jr., Antoon, Dalrymple & Beck, Alexandria, for relator.
Joel E. Gooch, Allen, Gooch, Bourgeois, Breaux & Robison, Lafayette, for respondents.
CALOGERO, Justice.
The issue involved in this case is whether a worker hired in the state of Louisiana and injured while working on a fixed platform located on the outer Continental Shelf beyond the territorial waters of the State of Louisiana is entitled to recover Louisiana Worker's Compensation benefits, in state court, notwithstanding his entitlement to and receipt of benefits under the federal Longshoreman and Harbor Workers' Compensation Act.[1]
*823 Relator Dan Thompson injured his right hand while employed by respondent Teledyne Movible Offshore, Inc. on an immovable platform located on the outer Continental Shelf off the coast of Louisiana.[2]
He sued in Louisiana state court (the Ninth Judicial District Court for the Parish of Rapides) for workers' compensation benefits. His employer and its compensation carrier, Argonaut Insurance Company, filed exceptions of prescription and lack of jurisdiction over the subject matter. The exception of prescription was abandoned; the district court overruled the exception to the jurisdiction. The Court of Appeal for the Third Circuit granted a writ on application of defendant, and thereafter made it peremptory, sustaining the defendants' exception of lack of subject matter jurisdiction and dismissing plaintiff's suit at his cost.
We granted relator's writ application to consider the issue expressed at the outset of this opinion. 412 So.2d 81 (La.1982). We determine that there is jurisdiction in the Louisiana state court over the claim involved in this litigation.
Dan Thompson, a Louisiana roustabout, had been employed for approximately one and a half years as a derrick hand for Teledyne Movible Offshore, Inc. out of its New Iberia, Louisiana office. Intercoastal City, Louisiana was his departure point to an immovable platform rig in Vermillion Block 26, approximately four miles off the coast of Louisiana in the federal waters of the outer Continental Shelf. While Thompson was working on the platform on March 9, 1980, a pipe fell, striking and injuring his right hand. When his employer and compensation carrier resisted his demand for state compensation benefits, he sued them in Rapides Parish.
The district judge, in written reasons for denial of the exception of lack of jurisdiction, relied upon two United States Supreme Court decisions: Gulf Offshore Co. v. Mobil Oil Corp., et al., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) and Sun Ship, Inc. v. Commonwealth of Pennsylvania, et al., 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 258 (1980). The Court of Appeal, in reversing the district court, cited the earlier cases, Smith v. Chevron Oil Company, et al., 517 F.2d 1154 (5th Cir. 1975) and Strange v. Fidelity and Casualty Company of New York, 262 So.2d 799 (La.App. 3rd Cir. 1972).
For the reasons which follow, we find that the Louisiana state courts do have subject matter jurisdiction over a claim for Louisiana compensation benefits because of an employment related accidental injury sustained by a Louisiana worker hired in Louisiana for work on a fixed platform outside the territorial waters of Louisiana.
For many decades past, Louisiana courts have entertained worker's compensation suits by Louisiana residents injured outside Louisiana while engaged in employment having a substantial connection with Louisiana. In 1951, this Court expressly approved earlier jurisprudence in that regard, quoting McKane v. New Amsterdam Casualty Co., 199 So. 175 (La.App.Orl.1940) at 178-79 in its decision, Ohlhausen v. Sternberg, 218 La. 677, 50 So.2d 803 (1951):
Although there is no express stipulation contained in the statute to the effect that it shall have extra-territorial jurisdiction, it has been consistently held by our courts that, if the contract of employment is made within this State, the law will apply even though the employee was injured in another State or in a foreign country. See Hargis v. McWilliams Co., Inc., 9 La.App. 108, 119 So. 88, Festervand v. Laster, 15 La.App. 159, 130 So. 634, and Selser v. Bragmans Bluff Lumber Co., La.App., 146 So. 690. And the Supreme Court of the United States has *824 declared that the State courts have power to grant compensation to employees, locally employed, for injuries received outside of its borders. See Bradford Electric Light Co., Inc. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696, and Alaska Packers Ass'n v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 70 L.Ed. 1044.
Therefore, had Thompson been working in another state or even a foreign country under the same circumstances (a Louisiana worker injured in the course of hazardous Louisiana connected employment), he could avail himself of Louisiana's compensation law and have access to our courts if need be. Mattel v. Pittman Construction Co., Inc., et al., 248 La. 540, 180 So.2d 696 (1965); Babineaux v. Southeastern Drilling Corp., 170 So.2d 518 (La.App. 3rd Cir. 1965).
This jurisprudence was codified in 1975 with the enactment of La.R.S. 23:1035.1 which reads in pertinent part:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by the Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
(2) The payment or award of benefits under the workmen's compensation law of another state, territory, province, or foreign nation to an employee or his dependents otherwise entitled on account of such injury or death to the benefits of this Chapter shall not be a bar to a claim for benefits under this act; provided that claim under this act is filed within the time limits set forth in R.S. 23:1209. If compensation is paid or awarded under this act:
(a) The medical and related benefits furnished or paid for by the employer under such other workmen's compensation law on account of such injury or death shall be credited against the medical and related benefits to which the employee would have been entitled under this act had claim been made solely under this act;
(b) The total amount of all income benefits paid or awarded the employee under such other workmen's compensation law shall be credited against the total amount of income benefits which would have been due the employee under this act had the claim been made solely under this act.
While this Court has not expressly addressed the issue, there have been Louisiana Court of Appeal cases which have prevented a Louisiana worker injured on the outer Continental Shelf off the coast of Louisiana from seeking redress in Louisiana courts, on the theory that the federal presence in the area excluded state jurisdiction. Strange v. Fidelity & Casualty Company of New York et al., 262 So.2d 799 (La.App. 3d Cir. 1972); Crooks v. American Mutual Liability Ins. Co., et al., 175 So.2d 875 (La.App. 3d Cir. 1965). Writ refused. "No error of Law in the judgment of the Court of Appeal." 248 La. 372, 178 So.2d 659 (1965). However, in an incisive concurring opinion which may be viewed as prophetic in light of the recent pronouncements of the United States Supreme Court discussed hereinafter, Judge Tate, then a judge of the Third Circuit Court of Appeal of Louisiana said in Crooks, supra at 878:
In summary, I personally feel that the provision in the Outer Continental Shelf Lands Act that a injured employee "shall" be afforded the Longshoremen's remedy means simply that, if he so elects, he shall be afforded such remedy; but it is not intended to bar his resort to the state compensation remedy otherwise applicable because of the state-connected employment relationship in which the state-resident employee is injured.
Little more than a year ago, the U. S. Supreme Court directly addressed the question of whether federal courts have exclusive *825 subject matter jurisdiction in personal injury and indemnity actions arising out of injuries on the outer Continental Shelf. Gulf Offshore Company v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981).[3] The Court concluded that the federal political jurisdiction to which the Outer Continental Shelf Lands Act (43 U.S.C. § 1331 et seq.) is directed did not preclude a state court's concurrent judicial jurisdiction over matters traditionally within their province.
The Gulf Offshore decision recognized that concurrent jurisdiction (state and federal) is presumed. This presumption of concurrent jurisdiction can be rebutted however, by "[1] an explicit statutory directive, by [2] unmistakable implication from legislative history, or by [3] a clear incompatibility between state court jurisdiction and federal interests." Gulf Offshore, supra at 482, 101 S.Ct. at 2875. The Court concluded that none of these considerations barred a state court's assuming jurisdiction over personal injury or indemnification actions stemming from events occurring on the outer Continental Shelf.
The discussion in Gulf Offshore about the text and legislative history of the OCSLA is applicable to the case at hand. On those points, the Court found that despite the reference to exclusive federal jurisdiction in OCSLA, 43 U.S.C. § 1333(a)(1), wherein the Shelf was equated with a landlocked federal area within a state,[4] Congress did not mean by that assertion of political jurisdiction that the federal courts should be the sole forum for adjudicating all controversies arising from operations on the Shelf. Not only have state and federal courts enjoyed concurrent jurisdiction in areas of federal territorial sovereignty, the Court noted, but also, in the case of the Shelf in particular, the legislative history underscores the fact that the Congressional concern was to assure federal political control over the Shelf and its "real property, minerals and revenues, not over causes of action." Gulf Offshore, supra at ___, 101 S.Ct. at 2877.
Furthermore, the Court expressly minimizes the distinction between events happening in another state and events happening in the federal territory of the Shelf by stating in Gulf Offshore, supra at 481-482, 101 S.Ct. at ___:
That the location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State's subject-matter jurisdiction. Ohio River Contract Co. v. Gordon ... [244 U.S. 68] at 72, 37 S.Ct. [599] at 601 [61 L.Ed. 997].
Finally, while 43 U.S.C. § 1333(b) states that the LHWCA is applicable to "disability or death of an employee resulting from any injury occurring as a result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf," it does not state that the LHWCA is the only compensation act that can be applied to *826 instances of disability or death to an employee thereon. There is no language of exclusivity in 43 U.S.C. § 1333(b). Therefore we conclude that there is no (1) explicit statutory directive, nor (2) unmistakable implication from the legislative history, to bar a state court from exercising concurrent jurisdiction over worker compensation claims arising on the outer Continental Shelf.
The final inquiry under the Gulf Offshore test, then, becomes whether there is a clear incompatibility between the application of the Louisiana compensation law, for injuries sustained by a Louisiana worker engaged in Louisiana related work on an immovable platform on the outer Continental Shelf, and the federal interests evidenced in OCSLA through application of the LHWCA.
The United States Supreme Court found that there exists no incompatibility when a state applies its workers' compensation scheme to land-based injuries that fall within the coverage of the LHWCA. Sun Ship Inc. v. Commonwealth of Pennsylvania, et al., 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458, rehearing denied, 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980). The Sun Ship Court found that the 1972 deletion from LHWCA § 903(a) of the phrase: "[i]f recovery ... through workmen's compensation proceedings may not validly be provided by State law," reinforced the Supreme Court's previous interpretation that the LHWCA contemplated federal and state concurrent jurisdiction. Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). The Court in Sun Ship, supra, at 722, 100 S.Ct. at 2437 concluded:
We therefore find no sign in the 1972 amendments to the LHWCA that Congress wished to alter the accepted understanding that federal jurisdiction would coexist with state compensation laws in that field in which the latter may constitutionally operate under the Jensen doctrine. (Footnote omitted. Emphasis provided.)
The U. S. Supreme Court's conclusion in Sun Ship is the same as that reached earlier by this Court in Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (1976) in a well-reasoned opinion by Justice Marcus. In the Poche opinion, Justice Marcus summarized the historical development of the LHWCA from Jensen to the present.[5]
*827 In Poche, supra at 1217, we concluded that even though the United States Supreme Court had not overruled Jensen, its applicability had been confined to its facts (suits relating to the relationships of vessels, "plying the high seas and our navigable waters, and to their crews"), so that there was "no constitutional impediment to the concurrent operation of the LHWCA and Louisiana Workmen's Compensation Act with respect to injuries sustained on land in the course of new ship construction."
Furthermore the case now before us does not involve longshoremen or historically maritime workers. Rather this plaintiff is like the plaintiff in Crooks, the case which spawned Judge Tate's farsighted concurrence: Thompson is an oil worker who may perform essentially the same non-maritime duties on land or alternatively on an offshore site. Therefore the application of state law would not "work material prejudice to the characteristic features of the general maritime law, or interfere with the proper harmony and uniformity of that law in its international and interstate relations." Crooks, supra at 879.
Defendants' counsel argues that neither Gulf Offshore, nor Sun Ship, nor Poche are applicable to the case at hand. Gulf Offshore, they argue, should be limited to the application of state law where it is surrogate federal law. However, there is nothing in Gulf Offshore at variance with affording state court jurisdiction on the Shelf, and the application of state compensation law. As stated earlier, the only potential barrier is the question of whether the state compensation scheme is incompatible with the LHWCA. That question has been resolved clearly in this Court's Poche decision and most recently by the U. S. Supreme Court in Sun Ship.
State and federal compensation schemes may coexist on land and in the territorial waters of Louisiana. Malone and Johnson, Workers' Compensation § 411, 14 La.Civ. Law Treatise 336 et seq. It is argued, however, that the co-existence of federal and state compensation schemes within Louisiana territory does not support their co-existence beyond the state's territorial waters, the contention being that in the latter situation there is an incompatibility *828 with federal interests. We do not find any incompatibility.
Plaintiff admits that the benefits due under the federal and state compensation laws may be different.[6] But such a difference does not constitute incompatibility. As the Court in Sun Ship remarked, 447 U.S. at 725, 100 S.Ct. at 2439:
we are not persuaded that the bare fact that the federal and state compensation systems are different gives rise to a conflict that, from the employer's standpoint, necessitates exclusivity for each compensation system within a separate sphere.
It is significant and we are impressed by the fact that the United States Supreme Court determined that while the emphasis in the LHWCA was on establishing a federal minimum to upgrade compensation benefits, there was no indication that Congress was concerned about a potential disparity between "adequate federal benefits and superior state benefits." Sun Ship, supra U.S. at 723-724, 100 S.Ct. at 2438. Furthermore, the Court commented supra at note 8, that in the case of recovery under both compensation schemes, one would be credited against the other to avoid double recovery.
We conclude that the LHWCA is not the exclusively applicable workers' compensation statute for injuries occurring on the outer Continental Shelf. Such exclusivity is neither mandated by federal statute, by federal legislative history, or by incompatibility with state law. Furthermore, the recent United States Supreme Court decisions effectively invite the state courts to apply state law in matters arising on the outer Continental Shelf if otherwise within the subject matter jurisdiction of the state court. Absent any federal prohibition and consistent with the public policy of the state of Louisiana, Louisiana state courts have subject matter jurisdiction over state compensation litigation resulting from work performed on fixed oil platforms on the outer Continental Shelf. Any reticence to assume jurisdiction and apply the Louisiana workers' compensation statute heretofore expressed by inferior Louisiana courts was prompted by perceptions of the exclusivity of federal law. Such perceptions are not valid in light of the Gulf Offshore and Sun Ship decisions of the United States Supreme Court.
Therefore, we find that this plaintiff, a Louisiana worker injured while engaged in Louisiana connected employment on a fixed platform on the outer Continental Shelf (outside the territorial waters of Louisiana) may sue in Louisiana state court under La.R.S. 23:1021 et seq. and seek benefits thereunder.

Decree
Accordingly, we reverse the Court of Appeal's dismissal of the plaintiff's action for lack of subject matter jurisdiction, reinstate the district court's judgment overruling the defendants' exception, and remand the case to the district court for further proceedings.
COURT OF APPEAL JUDGMENT REVERSED; DISTRICT COURT'S OVERRULING DEFENDANTS' EXCEPTION AFFIRMED; REMANDED.
NOTES
[1] There is not here involved the possibility of double recovery of benefits, for when the injured worker receives benefits under each compensation act, the employer is allowed credit for benefits paid under one plan against those paid under the other. Calbeck v. Travelers Insurance, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). See also: Larson, 45 So. Calif.L.Rev. 699, 728-738 (1972).
[2] The outer Continental Shelf includes all submerged lands lying seaward and outside the adjacent state water boundaries, of which the subsoil and seabed are subject to United States jurisdiction and control. 43 U.S.C. § 1331(a). Louisiana's historic gulfward boundary extends three marine leagues into the Gulf of Mexico from the coast of Louisiana. La.R.S. 49:1.
[3] In that case respondent Mobil Oil Corporation had contracted with petitioner Gulf Offshore for the performance of certain operations on an offshore drilling platform. During a hurricane evacuation by boat, an employee of Gulf Offshore was injured. He sued Mobil and the boat owner in Texas state court seeking recovery of damages based upon negligence. Mobil sought to third party Gulf Offshore for indemnification. The case did not involve a workers' compensation claim.
[4] OCSLA 43 U.S.C. 1333(a)(1) reads as follows:

The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter. (Emphasis provided)
[5] Justice Marcus stated in pertinent part at 339 So.2d 1215-1217:

In 1917, the United States Supreme Court held, in a divided opinion, that a state compensation law could not constitutionally be applied to a longshoreman who was killed aboard a ship in navigable waters while engaged in unloading cargo. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 62 L.Ed. 1086 (1917). The Court emphasized that, under the facts of the case, the matter was clearly within traditional admiralty jurisdiction and therefore not subject to the diverse legislation of the various states. The Court noted however, that while "it (is) difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation [sic]. That this may be done to some extent cannot be denied...." The rule was announced that state legislation would be permissible unless "it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." In 1917, a majority of the Court felt that this rule was violated when a state provided workmen's compensation to a stevedore injured on navigable waters. That state law could constitutionally apply to longshoremen injured on land was confirmed in State Industrial Commission v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922).
Thereafter, in Grant Smith-Porter Shipping Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922), the Supreme Court crossed its own line of demarcation between state and federal jurisdiction and held that, if the nature of an employee's work was of "local concern," a state compensation act could apply without working a material prejudice to the federal maritime law, even if the injury occurred on navigable water.
In 1927, Congress passed the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. 901 et seq., which provided a federal compensation remedy for workers injured on navigable waters "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 U.S.C. 903(a). This language of the act appeared to make the state and federal compensation remedies exclusive and engendered much confusion over which cases involved interests that were "maritime but local" and thus cognizable under state as opposed to federal law.
In Davis v. Department of Labor & Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), the Supreme Court coined the phrase "twilight zone" to describe the shadowy area in which it was difficult to determine whether state or federal law should apply. In this area, if a worker elected to apply for state benefits his choice would be upheld and the application of state law presumed constitutional. In subsequent cases, the Court made it clear that an area of concurrent jurisdiction existed wherein workers injured on navigable waters, even when their occupations were traditionally maritime, could pursue remedies available under state compensation laws. (Citations omitted.) Although dicta in the Supreme Court's decision in Pennsylvania Railroad Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953) referred to the LHCA as an exclusive remedy, the Court's comments were made in a case involving a contest between two federal compensation systems (FELA and LHCA). Moreover, in Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed. 368 (1961), the Court judicially excised the troublesome clause in the LHCA "if recovery ... may not validly be provided by State law," which had created the implication that state and federal compensation systems were exclusive. The Court held that LHCA benefits would be available for all workers injured on navigable waters, whether or not a particular injury might also have been within the constitutional reach of a state compensation act. In so ruling, the Court did not suggest that the availability of federal benefits thereby excluded the operation of state law, but rather stated that its decision was consistent with Davis and the twilight zone concept.
... What can be gleaned from an examination of these cases is that the United States Supreme Court has made it clear that state compensation laws can be constitutionally applied concurrently with the federal compensation system to some, if not all, categories of maritime workers. While the Court has never overruled Jensen, it has demonstrated that the uniformity of the federal maritime law is not materially prejudiced by the operation of state compensation remedies even in areas where the federal law is also applicable....
[6] Under the LHWCA, plaintiff is entitled to a scheduled payment for his injury, limited to a maximum of thirty weeks of compensation, regardless of whether it produces a permanent and partial disability and impairment of earning capacity. Potomac Electric Power Company v. Director, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980). Under the Louisiana compensation law, he may be entitled to greater benefits, for permanent and partial disability. In this regard the Louisiana Act provides for payment of sixty-six and two thirds (662/3) of the difference between his present wages and the wages he was earning at the time of the accident up to a maximum of 450 weeks.