508 So.2d 975 (1987)
Larry LEWIS, Plaintiff-Appellant,
v.
MODULAR QUARTERS, et al., Defendants-Appellees.
No. 86-547.
Court of Appeal of Louisiana, Third Circuit.
June 8, 1987.
Rehearing Denied July 15, 1987.
James P. Macmanus and Steven A. Chandler, Lafayette, for plaintiff-appellant.
Alex A. Lopresto of Roy, Forrest and Lopresto, Gibbens and Blackwell, John Blackwell, New Iberia, Marc Judice, Lafayette, for defendants-appellees.
Before DOMENGEAUX, DOUCET and KNOLL, JJ.
DOUCET, Judge.
Plaintiff, Larry Lewis, filed suit for damages incurred as a result of injuries sustained in a work-related accident. Named as defendants were Modular Quarters, Inc. (Modular), Universal Fabricators, Inc. (Unifab), and Abbeville Lumber Co., Inc. A summary judgment was granted in favor of Unifab and plaintiff now appeals.
Plaintiff was employed by 4-D Corrosion Control (4-D) at the time of the accident in question. 4-D is engaged exclusively in the work of sandblasting and painting. Unifab is engaged in the fabrication and refurbishing of oil field structures and had contracted with 4-D to perform some sandblasting and painting work on a two-story living quarters unit with a heliport attached to the top of the second story. The *976 unit was located in Unifab's forty-acre yard.[1]
On the day of the accident, July 6, 1984, plaintiff and other 4-D employees spent the morning setting up sandblasting equipment to sandblast the underside of the heliport. A stairway was attached to the side of the two-story unit leading to the heliport. As plaintiff was walking up the stairway, he tripped and fell about 15 feet to the ground below. He claims that a railing which would have prevented his fall was missing from a section of the stairway. Plaintiff began receiving benefits under the Longshore and Harbor Worker's Compensation Act and subsequently filed this suit on July 5, 1985.
Depositions were taken of the plaintiff and two employees of Unifab, David Berard and Joseph Zagar. Following the depositions, Modular and Unifab filed separate timely motions for summary judgments which both were set to be tried on April 1, 1986.
Although the record does not reflect it, counsel for plaintiff claims that prior to April 1, he contacted counsel for Modular and they agreed to continue the hearing on the motion for summary judgment. Counsel for plaintiff apparently neglected to contact counsel for Unifab to request a similar continuance. Referring to his request for a continuance regarding Modular's motion, counsel for plaintiff states in his brief on appeal, "the Continuance was verbally granted and a Motion to Continue was filed." The record contains no indication that the trial court verbally granted a continuance and the only motion to continue that is contained in the record was filed and denied on April 9, 1986, eight days after the court granted Unifab's motion for summary judgment.
In his brief on appeal, counsel for Unifab states that it filed a pre-trial memorandum on March 27,1986, briefing the issues to be argued at the April 1 hearing. However, counsel for plaintiff claims he did not receive a copy of the memorandum until April 2. The record does not contain the memorandum nor any indication that it was ever filed with the court. In any case, the hearing was held on April 1, 1986, and Unifab's motion for summary judgment was granted. The minutes of court for April 1 indicate that only counsel for Unifab was present.
The record does not contain any written reasons for judgment. However, it is apparent from the briefs on appeal submitted by plaintiff and Unifab that the trial court found that the pleadings and depositions[2] showed that there was no genuine issue as to the fact that Unifab was the statutory employer of plaintiff and therefore his exclusive remedy under Louisiana law was limited to worker's compensation benefits and Unifab was immune from suit in tort by plaintiff.
On appeal plaintiff asserts three assignments of error. He first contends that the trial court erred in granting a summary judgment because Unifab did not file a pre-trial memorandum at least five days prior to the April 1 hearing on the motion as required by Rule 7.1 of the Sixteenth Judicial Court.
It is well settled under Louisiana jurisprudence that local rules of court are binding upon litigants and the court. Brumfield v. Brumfield, 178 So.2d 379 (La.App. 1st Cir.1965), writ denied, 248 La. 435, 179 So.2d 274 (1965). However, it is equally well settled that an appellate court may not take cognizance of local rules of court. To be considered they must have been introduced in evidence and be found in the record on appeal. Bryant v. Travelers Insurance Co., 288 So.2d 606 (La.1974); Trahan v. Petroleum Casualty Company, 250 La. 949, 200 So.2d 6 (1967). It is not contended that a copy of Rule 7.1 of the Sixteenth Judicial District Court was ever filed in evidence and we are unable to recognize it of our own accord. We therefore find no merit to this assignment of error.
*977 Plaintiff next contends the trial court erred in granting a summary judgment in this case because there was a genuine issue as to whether or not Unifab was the statutory employer of plaintiff.
Summary judgments are provided for by LSA-C.C.P. art. 966 which reads in pertinent part:
"A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
LSA-R.S. 23:1061 provides that:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
LSA-R.S. 23:1032 provides in pertinent part:
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."
Simply stated, under the circumstances described in LSA-R.S. 23:1061, where Unifab is the principal, 4-D is the contractor, and plaintiff is the employee (of 4-D); Unifab is immune from a suit by plaintiff in tort. In such a situation, Unifab would be considered the "statutory employer" of the plaintiff. For summary judgment purposes the question of whether or not Unifab was the "statutory employer" of plaintiff is one of material fact.
In the recent case of Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986) the Supreme Court summarized the general *978 rules used to determine whether a statutory employment relationship exists:[3]
"From a reading of Benson and its progeny the following general rules or method of analysis can be gleaned. Basically, a determination of whether a statutory employment relationship exists involves a three level analysis. In the first level, the primary focus is on the scope of the contract work. "The specific task to which an individual employee is put should not be determinative of his coverage under the Act. Instead, the entire scope of the work contract must be considered." Lewis, supra, citing Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees. In this situation, "the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play" because the contractor is an independent business enterprise, rather than a mere intermediary interposed to avoid compensation responsibility. Williams v. Shell Oil Co., 677 F.2d 506 (5th Cir.1982) (Tate, J. writing for the panel), citing 13 W. Malone & H. Johnson, La.Civil Law TreatiseWorker's Compensation, §§ 78, 126 (1980).
`If it is determined that the contract work is non-specialty, then the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation. The jurisprudence has forged several guidelines, in no way exhaustive, which can aid a court in resolving this factual issue:
`(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage. Lewis, supra; Benson, supra; Barnes, supra; Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503 (La.1973).
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry, supra. Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees. Lewis, supra, citing 1C. A. Larson, The Law of Workmen's Compensation, § 49.12, at 9-41 (1982).
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? See Reeves, supra; Brown v. Kaiser Aluminum and Chemical Corp., 289 So.2d 524 (La.App. 1st Cir. 1973), writ not considered 293 So.2d 171 (La.1974); Malone & Johnson, supra, § 126, pp. 252-53, fn. 91.
`These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or the lack thereof, etc. of the principal. What may be nonrecurring to a small concern, may for an industry *979 giant be regular. Similarly while the type of contract work may be non-specialized (i.e. manual labor), for a small concern it may well be beyond the expertise or capability of its employees. 1 A. Larson, Workmen's Compensation for Occupational Injuries and Death, § 49.13 (Desk ed. 1985). Basically, the factors developed by the jurisprudence strive to answer the overriding question of "whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors." Id. (emphasis added)
`Lastly, the court must determine if the principal is engaged in the work at the time of the alleged accident. La.R.S. 23:1032. At this level "[i]t is irrelevant that the principal has the financial resources or expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the statute, he must be engaged in the enterprise at the time of the injury." Lewis, supra.

`Armed with a full understanding of the reasoning process presently used by this Court in determining whether a statutory employment situation exists, our opinions are logically consistent.4 Both Benson and Rowe are specialty cases. In Rowe, we held that while routine maintenance activities of the pump were part of the trade, business or occupation of Cargill, the disconnection and reconnection of the pump to high voltage electricity, certainly necessary for the routine maintenance to be performed, was not within the skill, training or expertise of Cargill employees. Thus it is clear that the work of the contract electrician was beyond the scope of the regular maintenance activities. Because of the dangerous and specialized nature of the high voltage disconnection and reconnection, Cargill was required to hire a specialty contractor. As the court of appeal appropriately pointed out, our holding that the employee of the specialty contractor was not the statutory employee of Cargill was no more than "a reinteration and rearticulation of the jurisprudential rule of law found in Louis (sic) v. Exxon, supra, and Benson v. Seagraves, supra." Berry, 479 So.2d [944] at 946 [La.App. 3rd Cir.1985]. Benson is similar. There the injured employee was engaged in electrical planning and design, certainly specialty areas, requiring a degree of training not normally found beyond the special field.
(Footnotes omitted)
David Berard is an employee of Unifab whose responsibilities include managing the living quarters section in the power equipment division and project engineering. Joseph Zagar is Unifab's corporate secretary, an estimator, a project engineer, and is in charge of sales. Both Mr. Berard and Mr. Zagar stated that sandblasting and painting were a part of the regular work performed by Unifab on a day-to-day basis. Both stated that Unifab maintains a regular work crew of ten men, including a foreman, who sandblast and paint and that Unifab owns and maintains its own sandblasting and painting equipment.
In response to a subpoena duces tecum Mr. Zagar brought several documents with him when he was deposed. These documents were attached to his deposition and are found in the record. A partial payroll record shows nine full-time employees with a particular code next to their names which Mr. Zagar stated categorizes them as sandblasters and painters. The foreman of the crew was not listed. In addition, Unifab price schedules list rates for personnel and equipment for onshore and offshore work. Both schedules contain a description of sandblaster/painter with the applicable rates listed. Mr. Zagar stated that Unifab employs outside contractors to sandblast and paint when the workload requires it. The plaintiff confirmed that Unifab employed their own sandblasting and painting crew and stated that Unifab's crew was working elsewhere in the yard on the day of his accident.
We find that the "contract work", sandblasting and painting, performed by 4-D for Unifab is non-specialized. Sandblasting and painting do not require a degree of skill, training, experience, education, and/or equipment not normally possessed *980 by those outside of the contract field. This is clearly evidenced by Unifab's employment of a regular sandblasting and painting crew and the ownership and maintenance of its own equipment. The major piece of equipment needed for both sandblasting and painting is an air compressor. The actual sandblasting and painting requires no significant degree of skill or training. The employees of Unifab engaged in this type of work received an hourly wage of $7.50 which is not indicative of a job requiring significant skill, training, or experience. The sandblasting and painting work performed for Unifab by 4-D is not at all the type of work that the Berry, supra, court has labeled specialized.
The aforementioned evidence clearly shows that the "contract work", sandblasting and painting, is a part of Unifab's trade, business, or occupation under LSA-R.S. 23:1032, 23:1061, and the applicable jurisprudence, including Berry, supra. That evidence also establishes that Unifab was engaged in the work of sandblasting and painting at the time of plaintiff's accident and injury.
A review of the law and evidence leaves us with the firm opinion that there was no genuine issue as to the existence of a "statutory employer" relationship between plaintiff and Unifab. Unifab was the "statutory employer" of plaintiff at the time of his accident.
By plaintiff's last assignment of error he contends that the trial court erred in granting the summary judgment because there was a genuine issue as to whether the plaintiff was a longshoreman for purposes of the Longshore and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. § 901 et seq.
Plaintiff argues that this is a material fact because if he is covered under the LHWCA then the "statutory employer" immunity provided under the Louisiana Worker's Compensation Law, LSA-R.S. 23:1021 et seq., does not apply in this case.
The only reference to coverage under the LHWCA contained in the record is plaintiff's deposition statement that he is receiving compensation benefits under the LHWCA. Since the trial judge did not favor us with reasons for judgment we cannot determine for certain whether or not he considered this issue. However, in his brief on appeal plaintiff states that the issue of LHWCA coverage was not mentioned in Unifab's pre-trial memorandum which purportedly covers the issues addressed at the hearing on the motion for summary judgment. Although this issue was only raised by several sentences in plaintiff's deposition it should have been considered by the trial court in ruling on Unifab's motion. We feel it was more or less a "hidden" issue not considered by the trial court in ruling on Unifab's motion.
§§ 4(a) and 5(a) of the LHWCA, as in effect on July 6, 1984[4], the date of plaintiff's accident, provide that a general contractor such as Unifab is immune from a suit in tort filed by an employee of a subcontractor only when the general contractor has secured payment of compensation benefits. See Washington Metropolitan Area Transit Authority v. Johnson, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). In the instant case the LHWCA compensation benefits being received by plaintiff appear to have been secured by 4-D as plaintiff stated in his deposition that his compensation claim had been filed with 4-D's insurer. In such a case, Unifab clearly is not immune from a suit in tort by plaintiff under the provisions of the LHWCA. The conflict between the provisions of the Louisiana Worker's Compensation Law, specifically the "statutory employer" immunity provided by LSA-R.S. 23:1032 and 23:1061, and the federal LHWCA is obvious.
It was settled by the U.S. Supreme Court in Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), that the LHWCA is to be applied concurrently with state worker's compensation schemes. Sun Ship, however, concerned *981 five injured workers who wished to pursue their compensation remedies under the Pennsylvania worker's compensation scheme rather than the LHWCA. The U.S. Supreme Court upheld the state court decisions allowing the five to pursue their state remedies.
In support of his position that the provisions of the LHWCA should apply rather than the state provisions, plaintiff cites the U.S. Fifth Circuit Court of Appeals' decision in Jenkins v. McDermott, Inc., 734 F.2d 229 (5th Cir.1984), vacated on other grounds, 742 F.2d 191 (5th Cir.1984). In Jenkins, the plaintiff, who was employed by TAD, was injured while working at one of McDermott's oil platform construction sites pursuant to a contract between TAD and McDermott. The plaintiff claimed compensation benefits under the LHWCA and also sued McDermott in tort. The District Court granted a summary judgment in favor of McDermott on the grounds that plaintiff's work-injury did not fall within the coverage of the LHWCA but was covered by the Louisiana Worker's Compensation Law and McDermott as plaintiff's "statutory employer" was immune from a suit in tort by plaintiff.
Writing for the court, Judge Tate held that plaintiff's injury was covered under the terms of the LHWCA. Judge Tate also dismissed the notion that the idea of concurrent coverage of the state compensation scheme and the LHWCA required that the state "statutory employer" immunity defense apply to McDermott.
This holding is in accord with the decision rendered by the Louisiana Supreme Court in Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976). Poche concerned two independent suits which were consolidated. One suit concerned a worker, Aldrich Adams, who sustained injuries while working for Avondale Shipyards, Inc. Adams filed a tort action against several executive officers and fellow employees of Avondale. At that time, LSA-R.S. 23:1101 of the Louisiana Worker's Compensation Law was interpreted to allow such suits. Adams was receiving compensation under the LHWCA. Under the LHWCA, however, the exclusive remedy available to an employee injured through the negligence of an officer or fellow employee was compensation.
The Supreme Court examined the legislative history surrounding the 1972 amendments to the LHWCA providing for the first time coverage to workers injured on land and determined that Congress intended that the LHWCA and state compensation schemes were concurrent.
The court found however, that since Adams was receiving compensation benefits under the LHWCA he had elected to pursue his remedy under the LHWCA. The court held that since the LHWCA did not allow a suit in tort against officers or fellow employees, the district court had properly dismissed Adams' negligence action. On rehearing, the court, in a per curiam opinion, held that Adams' acceptance of compensation benefits under the LHWCA did not establish that he made an election, or a choice, of LHWCA remedies. The court remanded the case to the district court "for the purpose of trying the issue of whether Adams elected federal benefits."
Unifab argues that it makes no difference whether or not plaintiff is a longshoreman and paid compensation benefits under the LHWCA or under the Louisiana Worker's Compensation Law because the "statutory employer" immunity applies in either case. In support of its position Unifab cites a U.S. Fourth Circuit Court of Appeals case, Garvin v. Alumax of South Carolina, Inc., 787 F.2d 910 (4th Cir.1986).
In Garvin, supra, Alumax leased a ship terminal in South Carolina which was operated by plaintiff's employer. The plaintiff was injured working at the terminal and commenced receiving compensation benefits under the LHWCA. He subsequently instituted a tort action in federal court against Alumax. Alumax filed a motion to dismiss the suit on the grounds that under South Carolina law it was the statutory employer of the plaintiff and was immune from suit in tort by plaintiff. The district court denied the motion holding that LHWCA took precedence over state law *982 and it offered no such immunity. The Fourth Circuit reversed finding that the LHWCA and the state statute were not repugnant and that Alumax was entitled to avail itself of the "statutory employer" immunity provided under South Carolina law.
We find that, even though it conflicts somewhat with the decisions in Jenkins, supra, and Poche, supra, the well-reasoned decision in Garvin, supra, more properly reflects the views of this court regarding the tension between the LHWCA and state worker's compensation schemes. In view of the history of the LHWCA as set forth by the U.S. Supreme Court in Sun Ship, supra, and the court in Garvin, we can discern no intent by Congress to negate the available defenses provided by state law to third-party claims brought pursuant to state law. Plaintiff's claim against Unifab is clearly brought under state lawnot federal law.
For the reasons assigned, we affirm the judgment of the trial court. Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] The activities of Modular and Abbeville Lumber Co., are not relevant to the issues presented in this case.
[2] No affidavits were filed by either party.
[3] The following cases were cited in an unquoted portion of Berry, supra, and are referred to by "supra" in this quoted portion of the opinion: Rowe v. Northwestern National Ins. Co., 471 So.2d 226 (La.1985); Lewis v. Exxon Corp., 441 So.2d 192 (La.1983); Benson v. Seagraves, 436 So.2d 525 (La.1983); Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978); Berry v. Holston Well Service, Inc., 467 So.2d 90 (La.App. 3rd Cir.1985).
[4] §§ 4(a) and 5(a) were amended in September 1984 to provide such immunity to general contractors only when they are required to secure payment of compensation in cases where the subcontractor fails to do so.