539 So.2d 88 (1989)
Jake CRATER, Sr., Plaintiff-Appellant,
v.
MESA OFFSHORE CO., et al., Defendants-Appellee/Appellant.
No. 88-748.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
Rehearing Denied March 8, 1989.
Writ Denied May 12, 1989.
*89 Raleigh Newman, Lake Charles, for plaintiff/appellant.
Ross Griggs & Harrison, H. Lee Lewis, Jr., Houston, Tex., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James E. Diaz, Sr., John K. Hill, Jr., Lafayette, Jones, Tete, Nolen, Hanchey, Swift & Spears, Greg Massey, Lake Charles, for defendants/appellees.
Jeansonne & Briney, Craig W. Marks, Lafayette, for defendant/appellant.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOUCET, Judge.
The above numbered and entitled appeal was consolidated with an appeal entitled Crater v. Mesa Petroleum, et al., 539 So.2d 94 (La.App. 3rd Cir.1988). Both appeals arise out of the same suit for damages. We decide all issues presented in both appeals in this opinion but render a separate decree in the companion appeal.
Plaintiff, Jake Crater, Sr., filed suit for damages incurred as a result of injuries sustained in a work related accident. Named defendants were Mesa Petroleum Company (Mesa) and Nicklos Drilling Company (Nicklos). National Union Fire Insurance Company intervened in the suit. Mesa filed a third party demand against B.J. Hughes Sand Control (Hughes) seeking defense costs, indemnity and contribution. With respect to the main demand, Mesa filed a motion for summary judgment seeking dismissal on all claims against it by plaintiff. The district court granted such motion. With respect to the third party demand, Hughes filed a motion for summary judgment seeking dismissal on all claims against it by Mesa. Such motion was *90 granted. It is from these judgments the plaintiff and Mesa appeal.
Plaintiff was employed by B.J. Hughes Sand Control as a bulkhand in May of 1983. At this time, plaintiff was working on a fixed platform operated by Mesa which was located in the Gulf of Mexico, off of the coast of Louisiana on the Outer Continental Shelf. Mesa had previously entered into a contractual arrangement with Santa Fe Energy Company (Santa Fe) concerning the exploration for the production of hydrocarbon products on this site. The agreement specifically provided that Mesa would act as the "operator" of the well. Hughes was working on the Mesa platform pursuant to a contract between it and Mesa. A self-contained platform rig owned and operated by Nicklos was located on the platform.
Plaintiff injured himself as he and the Hughes crew were setting up equipment. Plaintiff slipped on a liquid substance on the deck, lost his balance, and twisted his back. Plaintiff began receiving benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA) and subsequently filed this suit. The suit was premised on allegations of defendants' negligence relative to the operations ongoing at the time of the incident in question.
On appeal, plaintiff asserts that the trial court erred when it granted summary judgment in favor of Mesa. In support of this contention, plaintiff asserts two assignments of error. He first contends that "The trial court erred in holding that the provisions of the Louisiana Workmen's Compensation act granted tort immunity against an employee who is drawing compensation benefits under the Longshore Act as a result of injuries on a fixed platform situated on the Outer Continental Shelf." We disagree.
As previously mentioned, the incident giving rise to this suit occurred on a fixed platform on the Outer Continental Shelf off of the coast of Louisiana. Pursuant to the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. Section 1333, the law of the adjacent state, to the extent such law is not inconsistent with Federal Law, applies as "surrogate" federal law.
The Louisiana Supreme Court in Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822 (La.1982), held that the LHWCA is not the exclusive remedy for a worker whose injury occurred on an oil platform on the Outer Continental Shelf off of the State of Louisiana and added that the Louisiana Workmen's Compensation Act could constitutionally apply to an injury received on a fixed platform in the Gulf of Mexico. In doing so, the court stated:
"We conclude that the LHWCA is not the exclusively applicable worker's compensation statute for injuries occurring on the Outer Continental Shelf. Such exclusivity is neither mandated by Federal Statute, by legislative history, nor by incompatibility with state law."
In Garvin v. Alumax of South Carolina, Inc., 787 F.2d 910 (U.S. 4th Cir. 1986), the court ruled that an injured longshoreman could not pursue a tort claim against a contractor which owned the piece of equipment that injured the plaintiff because that contractor was entitled to immunity under the South Carolina Worker's Compensation Statute as the plaintiff's statutory employer.
In Garvin, supra, Alumax leased a ship terminal in South Carolina which was operated by the plaintiff's employer. The plaintiff was injured working at the terminal and commenced receiving compensation benefits under the LHWCA. He subsequently instituted a tort action in federal court against Alumax. Alumax filed a motion to dismiss the suit on the grounds that under South Carolina Law it was the statutory employer of the plaintiff and was immune from suit in tort by plaintiff. The district court denied the motion holding that LHWCA took precedence over state law and it offered no such immunity. The Fourth Circuit reversed finding that the LHWCA and the state statute were not repugnant and that Alumax was entitled to avail itself of the "statutory employer" immunity provided under South Carolina Law. According to the Fourth Circuit, the issue was whether the plaintiff's choice *91 limited the defenses available to the party he had sued on the tort claim. Commenting that "The Federal and State Statutes, are readily harmonized and each may function in its own sphere without interference with the other," the court ultimately concluded that there was no conflict between the differing rules of immunity within the LHWCA and the South Carolina Statute. Accordingly, Alumax was entitled to urge the "statutory employer" immunity defense.
More recently, this court, in Lewis v. Modular Quarters, 508 So.2d 975 (La.App. 3rd Cir.1987) confronted the issue at hand and held that a defendant sued by a plaintiff receiving Longshoreman Compensation benefits is entitled to assert the statutory employer defense available under Louisiana Law since the accident occurred in a location where both the LHWCA and Louisiana Compensation Statute would apply.
In Lewis, supra, the plaintiff filed suit for damages incurred as a result of injuries sustained in a work related accident. Named as defendants were Universal Fabricators, Inc. (Unifab), Modular Quarters, Inc. (Modular), and Abbeville Lumber Co., Inc.
In Lewis, supra, the accident occurred as the plaintiff, employed by 4-D Corrosion Control, was engaged in sandblasting work on a two-story living quarters unit located in Unifab's yard. Plaintiff was climbing a stairway attached to the side of the unit when he tripped and fell approximately 15 feet to the ground below. As a result of the accident, plaintiff began receiving LHWCA benefits and subsequently filed suit against the defendant.
Unifab moved for summary judgment, urging that it was immune from suit as the statutory employer of the plaintiff. (4-D Corrosion had been contracted to do the sandblasting work by Unifab who was in the business of doing fabrication and refurbishing work of oilfield structures). The lower court granted Unifab's motion for summary judgment finding there was no genuine issue as to the fact that Unifab was the statutory employer of the plaintiff, and thus, plaintiff's exclusive remedy under Louisiana Law was limited to Worker's Compensation benefits and Unifab was immune from suit in tort by plaintiff.
On appeal, the plaintiff in Lewis, supra, argued that if he was covered under the LHWCA, then the "statutory employer" immunity provided under Louisiana Worker's Compensation Law would be inapplicable to the facts of their case.
In deciding the case, this court noted the obvious conflict between the provisions of the Louisiana Worker's Compensation Act, specifically the "statutory employer" immunity provided by La.R.S. 23:1032 and 23:1061 and the LHWCA. We also cited Sunship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980) wherein the U.S. Supreme Court held that the LHWCA is to be applied concurrently with state worker's compensation schemes. Ultimately, we concluded that in view of the history of the LHWCA as set forth in Sunship, supra, and in Garvin, supra, we could "discern no intent by congress to negate the available defenses provided by state law to third party claims brought pursuant to state law." Since the plaintiff's claim against Unifab was brought under state and not federal law, we affirmed the district court's granting of summary judgment in favor of Unifab.
Thus, the law of this court, as pronounced in Lewis, supra, is that a defendant may assert those defenses available under the Louisiana Worker's Compensation act in those areas where that Act and the LHWCA apply concurrently.
We are not swayed by the many decisions cited by plaintiff such as Jenkins v. McDermott, Inc., 734 F.2d 229 (5th Cir. 1984), vacated on other grounds, 742 F.2d 191 (5th Cir.1984), or Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976). After relying in part on Garvin, supra, in making our determination in Lewis, supra, we stated:
"We find that, even though it (Garvin) conflicts somewhat with the decision in Jenkins, supra, and Poche, supra, the well reasoned decision in Garvin, supra, more properly reflects the views of this *92 court regarding the tension between the LHWCA and state worker's compensation schemes."
We specifically reaffirm our views as stated in Lewis, supra. Thus, we find that the trial court did not err when it found that Mesa was entitled to assert the statutory defense provided by the Louisiana Compensation Act. As such, we will not disturb this finding on appeal.
Plaintiff next asserts that the trial court erred in granting tort immunity to Mesa Petroleum Company based on the provisions of La.R.S. 23:1061 and La.R.S. 23:1031. We disagree.
The Louisiana Worker's Compensation Law provides that there are times when an owner or principal will be liable for worker's compensation to an employee of a contractor he engages. La.R.S. 23:1061 provides:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
In such a case the principal is immune from tort liability, worker's compensation being the contractor's exclusive remedy. La.R.S. 23:1032 in pertinent part, provides:
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word (principal) shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."
(emphasis added)
The interpretations of La.R.S. 23:1061 and 23:1032 have been numerous, and expanding "tests" have developed for determining statutory employment and whether the statutory tort defense is available in a given factual situation.
Mesa relies on the second prong of La.R. S. 23:1032, a test which is often referred to as the "two contract theory," in support of its assertion that it is immune from suit in tort. The Louisiana Supreme Court illustrates what the "two-contract" defense is in a footnote in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). In Berry, supra, at p. 936, n. 3, the court stated:
"[A]n owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the `sub' to do a whole or a part of the total job contracted by the `general'. Under this contractual relationship, the contract work of the `sub' *93 has been held in decisions of the intermediate courts to be automatically within the trade, business or occupation of the `general'."
The two-contract situation was defined in Barnhill v. American Well Service and Salvage, 432 So.2d 917 (La.App. 3rd Cir. 1983) as "[a]nytime the principal contracts to do any work (whether part of the principal's regular trade, business or occupation being immaterial) and then contracts with another party for the work." The Louisiana Fifth Circuit in Thornton v. Avondale Shipyards, Inc., 479 So.2d 7 (La.App. 5th Cir.1985), describes this section 1061 defense as when "[t]he principal has contracted to perform some work for a third party and then contracts out all or part of the work to [a] subcontractor-employer."
As previously stated, Mesa entered into a contract with several parties to act as operator and pursue exploration for and production of hydrocarbon products in the Gulf of Mexico in Vermilion Block 361. The agreement specifically provided that Mesa "shall have the exclusive charge, control, supervision and management of all operations of every kind conducted on the joint lease for exploring for, developing, gathering, treating, handling, taking care of and saving oil and gas." In order to fulfill its obligation under this operating agreement, Mesa subcontracted with B.J. Hughes Sand Control. B.J. Hughes Sand Control employed plaintiff. Pursuant to the agreement between Mesa and Hughes, Hughes was performing work on Vermilion Block 361 on the date of the accident to allow production on that platform. It follows that since plaintiff was injured while executing work Mesa had contracted to perform and subcontracted to have done by B.J. Hughes Sand Control, Mesa is entitled to statutory employer status under the second prong of La.R.S. 23:1061. Accordingly, Mesa is immune from tort suit. After carefully reviewing the exhibits in support of Mesa's motion, we find that Mesa was clearly entitled to summary judgment.
Plaintiff asserts that because Mesa had an ownership interest in the lease at issue, it is not entitled to the "statutory employer" defense. We reject this assertion. Mesa contractually assumed the responsibilities of operator and undertook these obligations. The document clearly imposes obligations on Mesa and Mesa then undertook to fulfill those obligations by subcontracting a portion of them to plaintiff's employer. Clearly, this scenario fits within the realm of the "two contract theory" and Mesa's ownership interest in the lease does not change such a finding.
As previously stated, Mesa filed a third party demand against B.J. Hughes Sand Control seeking defense costs, indemnity and contribution. Hughes filed a motion for summary judgment seeking dismissal on all claims against it by Mesa. The District Court granted the motion for summary judgment.
Having found that the District Court properly granted Mesa's motion for summary judgment on the main demand, the issues of indemnification and contribution are moot. With respect to Mesa's demand for defense costs, the Louisiana Supreme Court in Meloy v. Conoco, 504 So.2d 833 (La.1987) spoke clearly to this issue. The court in Meloy, supra, stated:
"[A] cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid ... [T]he indemnitor's obligation for costs of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless." 504 So.2d at 839.
According to the clear pronouncement by the Louisiana Supreme Court in Meloy, supra, there can be no obligation on the part of the contractual indemnitor (B.J. Hughes) to pay for the indemnitee's (Mesa's) defense costs unless and until there is a determination that the indemnitee was totally free from fault. Unless and until that determination is made, Mesa's right to claim defense costs of B.J. Hughes is premature. As such, the District Court's granting of summary judgment in favor of B.J. Hughes was proper.
Accordingly, for the reasons assigned, the judgments of the lower court are affirmed *94 in all respects. Costs of the appeal are to be shared equally between defendant Mesa Petroleum and plaintiff Jake Crater, Sr.
AFFIRMED.