295 So.2d 483 (1974)
Wilson SMITH, Plaintiff-Appellant,
v.
The NORTH AMERICAN COMPANY FOR LIFE, ACCIDENT & HEALTH INSURANCE COMPANY, Defendant-Appellee.
No. 4500.
Court of Appeal of Louisiana, Third Circuit.
May 17, 1974.
Rehearing Denied June 26, 1974.
Writ Granted August 30, 1974.
Francis E. Mire, Lake Charles, for plaintiff-appellant.
Stockwell, St. Dizier, Sievert & Viccellio, by Robert W. Clements, Lake Charles, for defendant-appellee.
Before FRUGÉ, CULPEPPER, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This suit was filed by Wilson Smith originally in September, 1968, in the City Court of Lake Charles seeking to recover the sum of $436.50 in disability benefits under a group credit accident and sickness insurance policy issued by the defendant-insurer to Universal CIT Corporation, and a subsequent certificate of insurance issued to the plaintiff-individual policyholder. Plaintiff also sought penalties and attorney fees for the defendant's unreasonable refusal to pay the claim. Following a trial on the merits, judgment was rendered in favor of the defendant and plaintiff appealed for the first of what has become three times to this court. On the first occasion, 265 So.2d 781 (1972), Smith's appeal was dismissed because it had been perfected after the statutory delays for appealing had run. The second appeal was *484 from the Judge's refusal to nullify the signed judgment in this matter due to it not having been signed in open court. That appeal resulted in this court nullifying the judgment originally signed on May 17, 1972 [284 So.2d 670 (1973)]. Thereafter the judgment was signed in open court on November 27, 1973, and the present appeal perfected.
The facts of this case are that the plaintiff contracted for a loan with Universal CIT Corporation on May 17, 1967, in order that he might finance the purchase of a motor vehicle. Shortly thereafter he received an application card from CIT soliciting accident and health protection on his loan. Plaintiff filled in and mailed this card to the finance company's office in Oklahoma City, Oklahoma, and thereafter received an insurance certificate from the defendant, The North American Company for Life, Accident and Health Insurance. Therein, the defendant obligated itself to pay to the plaintiff the monthly sum of $79.84 if he became totally disabled "as a result, directly and independently of all other causes, of Injury or Sickness" during the term of the policy.
On February 28, 1968, plaintiff was examined by Dr. Steve F. Price, a general practitioner of Lake Charles, Louisiana. Plaintiff was complaining of pain in his left shoulder, arm, and neck, particularly in the shoulder. Smith was thereafter treated intermittently by Doctor Price and hospitalized from March 4th until March 7th because of his pain.
On April 27, 1968, the plaintiff formally applied for benefits under his certificate of insurance, alleging that he became disabled in February of 1968 and continued to be disabled because of pain in his left arm and neck. Doctor Price diagnosed the plaintiff's condition as disabling and due to cervical disc syndrome which also caused peripheral neuritis of the left ulna nerve. He later included osteoarthritis of the acromioclavicular joint as another primary cause of the disability. The plaintiff continued to be treated in the following months but apparently was released to return to work on September 1, 1968. During said disability the defendant refused to make the payments allegedly due and refunded all premiums which the plaintiff had theretofore paid. As a result plaintiff filed this suit on September 9, 1968.
The trial judge in written reasons dismissed plaintiff's suit, finding that plaintiff had either intentionally or unintentionally falsified his application for insurance by failing to set forth a disabling and reoccurring condition which had previously existed in his neck and shoulders, causing him to be hospitalized in 1965 and remain off his job with the railroad for a period of time.
On this appeal plaintiff cites as specifications of error: (a) the holding that plaintiff had falsified his application for insurance, and (b) the allowance by the court of defendant to introduce into evidence the application of plaintiff, when a copy of such application had not been attached to the certificate mailed to the plaintiff.
Defendant has answered plaintiff's arguments alleging, first, that the voidance of the policy by the trial court was correct and, alternatively, if not voided, the policy by its own terms excludes recovery by the plaintiff.
We need first only address ourselves to defendant's second allegation. For if the insurance contract (certificate) by its own terms excludes plaintiff from recovering under the facts as elicited herein, we need not consider the question of whether the trial judge correctly allowed the application to be introduced into evidence or whether plaintiff falsified said application.
As aforementioned, the defendant insurer was to pay disability benefits to the plaintiff if he became totally disabled "as a result, directly and independently of all other causes, of Injury or Sickness". The term "sickness" is defined in both the base *485 policy and the certificate issued to the plaintiff as meaning "a sickness or disease contracted and first manifesting itself after the Effective Date and prior to the Expiration Date of the certificate". (Emphasis added). In addition, stamped upon the face of the certificate in broad typed red print is the following: "DISABILITY CAUSED BY PREEXISTING CONDITIONS IS NOT COVERED."
The facts, in this regard, as found by the trial judge from the testimony of Doctor Price, the only physician testifying at trial, are that:
"... Mr. Smith, plaintiff, had been a long time patient of his and that he had treated him for years for various and sundry complaints. Dr. Price further testified that he admitted the plaintiff to St. Patrick's Hospital on March 4, 1968 and that the problem the plaintiff was having on the date of admission to the hospital was part and parcel of the problem for which he made his claim against the defendant insurance company. The doctor testified that the reason for the admission to the hospital on March 4, 1968 was because of pain in his neck and shoulder. On (TR13) Dr. Price testified that according to his records the plaintiff first had a known set of problems relative to his neck as far back as October, 1965. Dr. Price further testified that from his records that the plaintiff was admitted to the Southern Pacific Hospital on October 1, 1965 complaining of neck pain and osteoarthrosis and pain in the neck area. This is the same difficulty Dr. Price found the plaintiff to be suffering from when he was hospitalized in March, 1968. Dr. Price further testified (TR 14) that at the time the plaintiff was admitted to the hospital in March of 1968 that the plaintiff gave to Dr. Price a long history of pain in the neck area and radiating to his left shoulder. Dr. Price testified that this condition, according to plaintiff, had existed for about four (4) years, off and on and especially in the neck area. Dr. Price further testified (TR14) that the condition from which the plaintiff had been suffering during the period of 1965 to 1968 was a cervical disc syndrome. The doctor further testified that the cervical disc syndrome was part and parcel of the disabling factor that caused the plaintiff's disability during the period of time Dr. Price was treating him after February, 1968." [T. 92-3]
Plaintiff's attorney makes a valiant effort to convince this Court that plaintiff's 1968 disabling condition was different from any pre-existing injury or sickness. However, in our opinion the evidence clearly indicates that plaintiff's disability was due to a cervical (neck) disc syndrome and osteoarthritis of the acromioclavicular joint in the left shoulder. It is also very apparent that as far back as October, 1965, plaintiff was admitted to the hospital where osteoarthritis and cervical scoliosis was diagnosed. In fact at the time of admittance to the hospital in February, 1968, plaintiff himself gave a long history of about four years of periodic complaints of pain in the neck area radiating to the left shoulder. At trial, although plaintiff's testimony was often inconsistent, he even admitted that he had trouble with his neck as far back as 1965 and that he had advised the insurance company in his preliminary claim report that his disability was due to pain in his left arm and neck. Finally, we have the aforementioned testimony of the physician who was of the opinion that the disability of the plaintiff was due to the same chronic condition as plaintiff had had before, the cervical disc syndrome and other accompanying conditions.
In conclusion, it is evident to this court that plaintiff's disability was caused by a sickness or injury first manifesting itself long before the effective date of the insurance certificate, in addition to being a pre-existing condition. Under either situation plaintiff's disability is excluded by the provisions of the policy.
*486 Applicable to these facts is the legal principle that a valid insurance policy is a contract between the insured and the insurer and under LSA C.C. Art. 1901, as is true of all other contracts, it is the law between them. Sholes v. Continental Casualty Co., 196 So.2d 680 (La.App. 4th Cir. 1967). Further, where the language of the policy is clear and free of ambiguity [as it is herein] it constitutes the contract between the parties and must be enforced as written. Morgan v. State Farm Mutual Automobile Ins. Co., 195 So.2d 648 (La. App.3rd Cir. 1967); see also LSA C.C. Art. 1945-1946.
In addition, it is settled that in absence of conflict with laws or public policy, insurers have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations under the policy. Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939); Andrus v. Police Jury of Parish of Lafayette, 270 So.2d 280 (La. App. 3rd Cir. 1972); Cormack v. Prudential Ins. Co. of America, 259 So.2d 340 (La.App. 4th Cir. 1972); Sylvest v. Employers Liability Assurance Corp., 252 So. 2d 693 (La.App. 1st Cir. 1971); see also LSA R.S. 22:620. This is exactly what the defendant herein has done and the unambiguous provisions limiting its liability must be given effect. Since we so find, we need not consider the aforementioned assignments of error made by the plaintiff.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge (dissenting).
Both the Master Policy and the Credit Insurance Certificate held by Universal CIT define the sickness covered as follows: "The term `sickness' shall mean a sickness or disease contracted and first manifesting itself after the effective date and prior to the expiration of this certificate." However, the application for credit insurance which plaintiff signed states: "I am the person to be insured and certify that I am now in good health; also that I have no sickness nor injury for which I have consulted or been treated by a physician except: Operated on twice in 1964 for appendix, now back on the job and doing fine." (emphasis supplied)
The quoted provisions from the policy and the certificate are in conflict with the provisions of the printed application form signed by plaintiff. The policy and the certificate provide coverage only for "sickness or disease contracted and first manifesting itself after the effective date and prior to the expiration date of this certificate." It may be, as the majority holds, that this language must be construed as excluding all sickness or disease which was contracted or had manifested itself prior to the date of the certificate, regardless of whether those conditions were manifest at the time of the certificate.
However, the application for insurance which plaintiff signed states: "I am now in good health; also that I have no sickness nor injury for which I have consulted or been treated by a physician except * * *." (emphasis supplied) The language of the application clearly implies that plaintiff is covered if he was in good health at the time he signed the application and if he had no sickness nor injury at that time which was manifest.
Under LSA-R.S. 22:618 the application is part of the policy. Since any ambiguity in the policy must be construed against the insurer and in favor of the insured, we must accept the provisions of the application as controlling. Under the clear provisions of the application, plaintiff was required to state only that he was in good health and had no sickness nor injury at the time he signed the application.
*487 The facts clearly show that although the plaintiff had been hospitalized in 1965 for a similar neck condition, he had recovered and had been working on his job for the railroad for months when he signed the application for insurance in June of 1967. It was not until April of 1968 that he began to have similar neck trouble again and was hospitalized and made the present claim for disability benefits. Thus, the evidence shows clearly that at the time he signed the application for insurance, plaintiff was in good health and he had no sickness nor injury which was manifest.
Of course, under LSA-R.S. 22:619(B), the insurer has the triple burden to establish that a misrepresentation was made in the application, that the misrepresentation was material to the risk, and that it was made with an actual intent to deceive, Stoma v. Prudential Insurance Company of America, 281 So.2d 871 (3rd Cir. 1973) and the authorities cited therein. Under the facts stated above, it is clear that there was no misrepresentation by plaintiff in the application, since he had no sickness nor injury which was manifest at the time. It is also abundantly clear that there was no actual intent to deceive since plaintiff was working and thought he was in good health at the time he signed the application.
Furthermore, although I do not find it necessary to base my dissent on the issue, I think the trial judge was in error in considering the application as the basis for denial of recovery. LSA-R.S. 22:619 provides that a copy of the application must be attached to and made a part of the policy, and that if a copy is not attached, it shall not be admissible in evidence relative to any action on the policy. In the present case, no copy of the application was attached to the policy. The trial judge considered the application because he ruled the plaintiff had "opened the door" to a consideration of the application by filing a blank copy thereof in answers to interrogatories. The plaintiff filed a blank copy, not a filled-in copy, of the application for the limited purpose of showing what type of application had been used. I agree with the contention of the plaintiff that this did not open the door to the use of the filledin application as a defense.
For the reasons assigned, I respectfully dissent.