550 So.2d 754 (1989)
Timothy Michael EMFINGER, Plaintiff and Defendant-in-Rule-Appellee,
v.
Tonja Dixon EMFINGER, Defendant and Plaintiff in Rule-Appellant.
No. 20710-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Cooper, Hales & Posey by Thomas E. Cooper, Jr., Rayville, for defendant and plaintiff-in-rule-appellant.
John D. Crigler, St. Joseph, for plaintiff and defendant-in-rule-appellee.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
*755 LINDSAY, Judge.
The defendant, Tonja Dixon Emfinger, appeals from a trial court judgment granting the plaintiff, Timothy Michael Emfinger, a final divorce on grounds of adultery and granting him sole custody of the parties' two minor children.

FACTS
The parties were married on November 25, 1983. Of this marriage, two children were born: Hanna Michelle Emfinger, who was born October 2, 1985; and Adrian Chris, who was born October 24, 1986. On June 29, 1988, the plaintiff filed suit seeking a divorce from the defendant on the grounds of adultery. The petition alleged that the defendant had committed acts of adultery with a juvenile on June 17, 1988, and on June 20, 1988. In his petition, the plaintiff also sought to obtain sole custody of the children. A rule was directed to the defendant to show cause on July 20, 1988 why custody should not be awarded to the plaintiff. The trial court issued an ex parte order granting custody of the children to the plaintiff pending the hearing on the rule to show cause.
The defendant, who was properly served with the petition, filed no answer. On July 18, 1988, the plaintiff entered a preliminary default. On July 20, 1988, a hearing was held on the custody rule to determine the custody of the two minor children pending the outcome of the divorce proceedings. Ten witnesses testified at that hearing, at which the defendant was present but unrepresented by counsel. At the conclusion of the hearing, the trial court found that joint custody was not appropriate and granted sole custody of the two minor children to the plaintiff during the pendency of the divorce proceedings, subject to the defendant's right of visitation in the home of the plaintiff's parents.
On the following day, July 21, 1988, the case was taken up for confirmation of default on plaintiff's petition for divorce and permanent custody. The defendant was absent and unrepresented. The case was heard in the judge's chambers. No court reporter was present. Seven witnesses (six of whom had testified the previous day) testified at this proceeding. The court found that the plaintiff had proved adultery on the part of the defendant, and granted the divorce on that basis. Reiterating its custody order entered the previous day, the court continued the plaintiff's sole custody of the minor children, subject to the defendant's right to reasonable visitation at the residence of the plaintiff's parents.
The judgment of divorce was signed by the trial court on July 21, 1988. (The judgment on the custody rule was not signed until July 22, 1988.)
On July 28, 1988, the defendant, now represented by counsel, filed a motion for new trial. She contended that the evidence presented at the hearing on the divorce petition was legally insufficient to prove adultery. In support of her motion she attached the affidavit of an attorney who had attempted to obtain evidence on her behalf; an affidavit by James Stricklen, who had testified at the divorce hearing; and an affidavit by the juvenile with whom she was accused of committing adultery. The affidavit of the youth contended that he had never committed adultery with the defendant and that he had never been alone with the defendant except to wash her car.
A hearing on the motion for the new trial was held on September 14, 1988. At that time, the defendant called six of the seven witnesses who testified at trial. Because there was no recording or transcript of the testimony presented at the divorce hearing, the defendant asked each of the witnesses to recreate as nearly as possible the testimony they gave in the judge's chambers on July 21, 1988. These witnesses included the plaintiff; his mother, Dean Thompson Emfinger; Mrs. Bobby Lee Ulmer, the person from whom the defendant allegedly obtained a pickup truck for her teenage paramour; Daniel Lee Ulmer, Mrs. Ulmer's son, and the owner of the pickup which was allegedly sold to the defendant; Ida Ulmer, Daniel's wife; and C.O. Acker, Jr., who allegedly saw the defendant and her paramour after what he believed was a "romantic interlude." (The only witness from *756 the divorce proceedings who did not testify at the motion for new trial was Mr. Stricklen, whose affidavit was attached to the defendant's motion for new trial.)
The witnesses testified that it was "common knowledge" in the community that the defendant was having an affair with the youth. The plaintiff testified that on several occasions his wife would return home from work late at night and either refused to tell him where she had been or would give him implausible excuses. He also testified that the defendant had written a hot check for $3,500 in order to purchase a pickup truck for the youth. Mrs. Emfinger, the plaintiff's mother, testified that on one occasion she had observed the boy with the defendant. On this occasion the boy was inside the defendant's car, while the defendant was standing outside the car. She maintained that numerous friends had called and told her of the affair between the defendant and the youth, but she refused to name any of these individuals. She also testified as to the condition of the children, who had apparently been placed in her care at some point.
The Ulmers, from whom the pickup truck was purchased, testified that they had seen the defendant and the youth sitting close together in the pickup truck. Mr. Ulmer testified that, when he went to the boy's home to obtain some papers on the pickup truck, the defendant and the youth were there alone. Apparently, they were fully clothed. While the youth did not know where the papers were located in the house, the defendant was able to find them.
Mr. Acker testified that on the night of July 1, 1988, he saw a car and a truck near a shed on his property. When he approached the vehicles, they departed quickly. He eventually caught up with the pickup truck and ascertained that it was occupied by two youths, one of whom was the alleged paramour. He also ascertained that the defendant was in the other vehicle.
The affidavit of Mr. Stricklen stated that on or about June 25, 1988, he saw the defendant's car and a pickup truck parked on a gravel road near his shop. Several moments later he saw the youth standing next to the defendant's car talking to someone inside "[which] I took to be Tonja.". However, because the car had dark tinted windows, he could not see inside the vehicle.
At the conclusion of the hearing on the motion for new trial, the trial court found that the defendant had not carried her burden of proving that the judgment rendered on July 21, 1988, had been in error. Thereafter, the defendant filed this appeal, contending that the trial court erred in granting the judgment on July 21, 1988.
Although the record does not contain a transcript of the hearing on the confirmation of default, it does contain a narrative of facts entered into by the parties stipulating as to the testimony taken on July 21, 1988. The contents of the narrative are substantially the same as the testimony presented at the motion for new trial, with some exceptions. The narrative recites that the plaintiff testified that one of his reasons for filing for divorce were statements made to him by the defendant admitting adultery with the minor. (The plaintiff testified at the motion for new trial that the defendant had denied the adultery.) Also, Mr. Stricklen testified that he recognized the defendant as the person to whom the boy was speaking when he saw them on his property.
On appeal, the defendant assigns as error the following: (1) the trial court erred in conducting the divorce hearing in chambers; (2) the trial court erred in finding there was legally sufficient evidence of the defendant's alleged adultery; and (3) the trial court erred in awarding sole custody of the parties' minor children to the plaintiff while granting the defendant only minimal restrictive visitation rights.

PROCEEDINGS IN CHAMBERS
The defendant contends that the trial court erred in conducting the hearing on plaintiff's divorce petition in chambers. To the contrary, the plaintiff argues that the in chambers hearing dealt with child custody as well as the merits of the divorce action and therefore such a proceeding was authorized under LSA-C.C.Art. 146(G).
*757 Plaintiff contends that the issues of permanent child custody and adultery were so closely related that the circumstances required that they be tried together in chambers.
Generally, all judicial proceedings must be held in open court. However, the law provides specific exceptions to this axiom. The law authorizes certain judicial proceedings to be conducted in chambers instead of open court. LSA-C.C.P. Art. 195 lists the proceedings which a district judge is authorized to hear in chambers. No domestic matters are included in this list. However, § 5 provides "[t]rial of or hearing on any other action, proceeding, or matter which the law expressly provides may be tried or heard in chambers."
LSA-C.C. Art. 146(G) provides: "A custody hearing may be held in private chambers of the judge."
LSA-R.S. 9:314, which was added by Acts 1988, No. 872, provides as follows:
A. In addition to any hearing otherwise authorized by law to be held in chambers, the court by local rule, and only in those instances where good cause is shown, may provide that only with mutual consent, civil hearings before the trial court in separation and divorce proceedings may be held in chambers. Such hearings shall include the contested and uncontested proceedings and rules for alimony, child support, visitation, injunctions, or other matters provisional and incidental to separation and divorce proceedings.
B. A motion for hearing in chambers pursuant to this Section may be made by either party or upon the court's own motion.
C. Except for being closed to the public, the hearings held in chambers pursuant to this Section shall be conducted in the same manner as if taking place in open court. The minute clerk and the court reporter shall be present if necessary to perform the duties provided by law.
D. The provisions of this Section shall not be construed to repeal or restrict the authority otherwise provided by law for any hearing to be held in chambers.
[Emphasis ours]
This statute became effective on September 9, 1988, approximately a month and a half after the hearing on the plaintiff's divorce petition.
The court rules of the Sixth Judicial District Court were subsequently revised and now include a provision allowing in chambers hearings in separation and divorce proceedings at the court's discretion and "with mutual consent of the parties." The effective date of the revised rules was October 27, 1988.[1]
As previously stated, the law specifically provides that certain procedures may be conducted in chambers. Child custody hearings and various summary proceedings are among those proceedings. LSA-C.C.P. Arts. 2592 and 2595. LSA-C.C.P. Art. 1702(E) provides that a hearing in open court is not required for confirmation of defaults in divorce cases arising under LSA-R.S. 9:301 or 9:302, or separation cases arising under LSA-C.C. Art. 138(9).[2] However, prior to the passage of LSA-R.S. 9:314, a proceeding on a divorce petition sought on grounds of adultery under LSA-C.C. Art. 139(1) was not authorized to be held in chambers. Even under the new statute, such a proceeding may be held in chambers only under specific circumstances: (1) where the local court rules authorize the proceedings; (2) for good cause *758 shown; and (3) with mutual consent of the parties.
LSA-R.S. 9:314 is clearly a procedural statute as it describes "methods for enforcing, processing, administrating or determining rights, liabilities, or status." Thus, it is to be given retroactive effect unless the language shows a contrary intent. Hawn Tool Company v. Crystal Oil Company, 514 So.2d 636 (La.App.2d Cir.1987). However, retroactive application of this statute does not authorize the trial court's holding of the in chambers divorce proceeding because at that time there was no local court rule as required by the statute. Even if both the statute and the subsequently adopted court rule could be applied retroactively, there has been no showing of "good cause" as required by the statute (but not by the court rule). We do not believe that the mere fact that the divorce was based on allegations of adultery alone automatically demonstrates "good cause." Finally, the record does not indicate that the in chambers hearing was arrived at by "mutual consent." In fact, we seriously question whether LSA-R.S. 9:314 is applicable to confirmation of defaults because of the requirement of "mutual consent."
We have been unable to find any other cases in the jurisprudence dealing with this same factual situation, and particularly, we have found no cases or statutes (other than those referred to above) allowing in chambers confirmations of default on the merits of divorce actions. However, in analogous situations where the law required that certain actions be taken in open court, the failure to act in open court nullified that step in the proceedings. See, for example, Smith v. North American Company for Life, Accident and Health Insurance, 284 So.2d 670 (La.App.3rd Cir.1973), after remand, 295 So.2d 483 (La.App.3rd Cir.1974), reversed on other grounds, 306 So.2d 751 (La.1975), which held that a trial court judgment which was required by law to be signed in open court was declared null and void because it was actually signed in the clerk's office. The court found that the law mandated that the judgment be signed in open court, and that it was not one of the orders or judgments which a district judge was authorized to sign in chambers pursuant to LSA-C.C.P. Art. 194.
In the instant case, the trial court was authorized under LSA-C.C. Art. 146(G) to conduct custody proceedings in chambers. However, we find that the trial court was not authorized to conduct the divorce proceedings in chambers. The trial court should have bifurcated the proceedings conducted on July 21, 1988. Even though the two issues may have been closely connected, there is nothing in the record to indicate that the proceedings could not have been bifurcated. Further, under the circumstances of this case, it is apparent that much of the evidence on the issue of custody was taken at the hearing on the custody rule on July 20, 1988. The trial court's ruling on permanent custody on July 21 was presumably based in large measure upon the evidence previously adduced.
Because the merits of the divorce action were presented on confirmation of default in chambers without authority of law, we find those proceedings to be invalid. Accordingly, the judgment of divorce rendered at the conclusion of the confirmation of default is null and void.

PROOF OF ADULTERY
However, assuming arguendo that the divorce proceedings were not conducted improperly and thus invalid, we find that the evidence produced at the hearing was legally insufficient to prove the defendant's alleged adultery with the juvenile.
Adultery may be proved by direct or circumstantial evidence. When circumstantial evidence is relied upon to establish adultery, the evidence must fairly and necessarily lead to the conclusion that adultery has been committed. The evidence is to be viewed in light of "experiences and observations of life." The fact that a man and a woman are alone together does not necessarily justify presuming that it is for a romantic or sexual purpose. Wynn v. Wynn, 513 So.2d 489 (La.App.2d Cir.1987).
*759 The trial court's findings concerning evidence of adultery, which is a factual issue, depend heavily on credibility evaluations which are entitled to "very substantial weight" on review. Factual findings will not be disturbed on appeal unless they are clearly wrong, meaning that there is no reasonable basis in the record to support them. Wynn, supra.
Examination of the record demonstrates that the evidence falls woefully short of proving Mrs. Emfinger guilty of adultery. At best, much of the evidence is based upon mere gossip from unnamed "community" sources. Even Mr. Stricklen, arguably the most damaging witness against the defendant, only saw the alleged paramour standing outside the defendant's car. He could not say how long the defendant's car and the youth's truck had been parked near his shed or that the youth had in fact been in the defendant's car.
We also note that, while the narrative of facts asserts that the plaintiff originally testified that the defendant admitted committing adultery, the plaintiff in his sworn testimony at the hearing on the motion for new trial stated that he had asked his wife about the alleged affair and she had denied it.
Adultery is a serious accusation, as demonstrated by its inclusion as one of two grounds for immediate divorce under LSA-C.C. Art. 139. It cannot be proved by second hand gossip or allegations of "community knowledge." The record demonstrates no reliable evidence of an admission of guilt by the defendant. The evidence presented by the witnesses fails to adequately show that the defendant and her alleged paramour had the propensities or the opportunity to commit adultery. Although Daniel Lee Ulmer saw the defendant at the youth's house on one occasion, his testimony did not show that the parties were in a state of undress or that Mr. Ulmer observed any improper conduct between them. Several witnesses testified that they had seen the defendant and the youth, both fully dressed, seated close together in a pickup truck being driven on a public roadway; however, such evidence certainly does not prove adultery.
Testimony was taken concerning a "rendezvous" between the vehicles of the defendant and the youth on Mr. Acker's property. However, we note that Mr. Acker admitted that he saw another boy in the truck with the alleged paramour. In Weaver v. Weaver, 438 So.2d 1149 (La. App.1st Cir.1983), the court reversed a judgment of divorce granted on grounds of adultery, stating:
A spouse's innocence of immoral acts is presumed and the burden is upon the complaining spouse to prove an adulterous relationship by either direct or circumstantial evidence.... To warrant a divorce on the ground of adultery, circumstantial proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt.... The mere fact that a man and a woman are alone together does not necessarily create a presumption that adultery was committed.... We think there is even less of a presumption of adultery when another man is alone with the other two people.
Based on the foregoing, we find that the trial court clearly erred in granting judgment for immediate divorce in favor of the plaintiff on grounds of adultery. The plaintiff simply failed to prove a prima facie case of adultery.
Therefore, the trial court judgment of divorce must be reversed.

CHILD CUSTODY
The defendant also seeks reversal of the trial court's July 21, 1988 judgment which awarded sole custody of the minor children to the plaintiff. However, the plaintiff argues that the defendant did not contest the issue of custody in her motion for new trial and that it, therefore, cannot be reviewed by this court.
The evidence on the issue of child custody was adduced on July 20, 1988. At the conclusion of the hearing, the trial court rendered judgment in favor of the plaintiff. (The judgment was signed several days later.) The trial on the issues of adultery and permanent child custody were held in *760 chambers the next day. At that time the plaintiff's mother testified as to the care of the children and the plan for their care following the divorce. Judgment awarding sole custody of the children to the plaintiff was rendered at the conclusion of the hearing.
The award of custody on July 21, 1988, was effectively an award of permanent custody under LSA-C.C. Art. 157. This article provides: "In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146." [Emphasis ours]
As rendition of such an award of permanent custody is contingent upon the awarding of a legal separation or divorce, we find that the custody award of July 21, 1988, must be vacated as the judgment of divorce has been reversed and vacated by this court. Therefore, the previous judgment of the trial court awarding temporary custody of the children to the plaintiff is reinstated.[3]

CONCLUSION
The trial court judgment of divorce is reversed. The judgment awarding permanent custody of the children is vacated. The judgment of the trial court awarding temporary custody of the children to the plaintiff is reinstated. The case is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs are assessed to plaintiff.
REVERSED; AWARD OF TEMPORARY CUSTODY REINSTATED; REMANDED.
NOTES
[1] A copy of the court rules is not found in the record. We are aware that the Supreme Court held in 1974 that appellate courts were without authority to take judicial notice of the rules of a district court. Bryant v. Travelers Insurance Company, 288 So.2d 606 (La.1974). See also Lewis v. Modular Quarters, 508 So.2d 975 (La. App.3rd Cir.1987), writ denied 514 So.2d 127 (La.1987). However, this rule is outmoded. Lupo v. Lupo, 366 So.2d 932 (La.App.1st Cir. 1978). Also, the new Code of Evidence allows courts to take judicial notice of such rules. LSA-C.E. Art. 202(B)(1)(d).
[2] These actions are all based on the parties living separate and apart for prescribed periods of times without reconciliation. LSA-C.C.P. 969 also authorizes the rendition of summary judgments in these proceedings without a hearing or the taking of testimony.
[3] As the judgment concerning temporary custody is not before us on this appeal, we will make no comment upon it beyond saying that, based upon the information in this record, the restrictions placed upon the defendant's visitation rights appear to be somewhat questionable and should be carefully examined in future proceedings.