546 So.2d 1332 (1989)
Betty Bordelon LINDSEY, Plaintiff-Appellee,
v.
Bobby G. LINDSEY, Defendant-Appellant.
No. 88-349.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*1333 Colleen McDaniel, Lafayette, for plaintiff/appellee.
Marx & Marx, Paul C. Marx, Lafayette, for defendant/appellant.
Before GUIDRY, FORET and DOUCET, JJ.
DOUCET, Judge.
This is an appeal from an amended judgment, signed February 11, 1988, which ordered appellant, Bobby G. Lindsey, to pay permanent alimony to appellee, Betty Bordelon Lindsey, in the amount of $650.00 per month. We affirm.
This case originally came before the Fifteenth Judicial District Court in the form of a Petition for Separation filed by Mrs. Lindsey against Mr. Lindsey. The separation was granted and Mr. Lindsey was ordered to pay alimony pendente lite in the amount of $735.00 per month by a judgment signed November 21, 1986. On November 30, 1987, a judgment was signed which decreed a divorce between the parties and ordered Mr. Lindsey to continue paying alimony pendente lite until the rule for permanent alimony could be heard. The parties divided the community assets by mutual consent. Mrs. Lindsey's rule for permanent alimony and to make past due alimony executory was later heard, and by a judgment signed January 14, 1988, Mrs. Lindsey was decreed to be free from fault and Mr. Lindsey was ordered to pay her permanent alimony in the amount of $650.00 per month. The judgment also awarded Mrs. Lindsey $2,020.00 in arrearages. Mr. Lindsey filed a motion for a new trial. A judgment denying the motion for new trial on the basis that the issue of arrearages had been resolved was signed on February 11, 1988. On that same day, a judgment was signed amending the January 14, 1988 judgment. The amended judgment dismissed the rule for arrearages and ordered Mr. Lindsey to pay Mrs. Lindsey permanent alimony in the amount of $650.00 per month. From this adverse judgment Mr. Lindsey appealed, asserting four assignments of error.

PERMANENT ALIMONY
The circumstances in which permanent alimony may be granted and the factors to be considered in setting the award are set out in La.C.C. art. 160, which provides in pertinent part as follows:
"A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse.
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;

*1334 (f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
(4) Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage."
In reference to the above article, in Harper v. Harper, 496 So.2d 1369 (La.App. 3rd Cir.1986), writ denied, 499 So.2d 87 (La. 1987), this court stated:
"We note that the later version of Article 160 refers to `sufficient means for support' whereas the former wording of the article referred to `sufficient means for his or her maintenance.' We attach no significance to this change in terminology and find the items encompassed by the term support to be: food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses, and the income tax liability caused by alimony. See Buxton v. Buxton, 458 So.2d 606 (La.App. 3rd Cir. 1984), and cases cited therein."
In the instant case the trial court's finding that Mrs. Lindsey was free from fault has not been challenged. Thus, the issues in this case deal with Mrs. Lindsey's entitlement to permanent alimony and the amount of that alimony.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error appellant asserts that the trial court erred in calculating Mrs. Lindsey's income based on her working an average of 30 hours per week.
A review of Mrs. Lindsey's affidavit of income and expenses reveals that she is working 30 hours per week at $5.75 per hour for a total of $172.50 per week. In her affidavit, Mrs. Lindsey multiplied this weekly total by 4.25 weeks to get a monthly total of $733.00. Mrs. Lindsey's payroll deductions on that amount equal $178.66, for a net total of $554.34 per month.
During her testimony, Mrs. Lindsey stated that she sometimes works three or four extra hours per week at the same hourly rate, depending on whether other workers can't show up for work. She also stated that she expected to be working more during the month of December, since that was the busy season for the store where she was employed.
At the hearing on this matter, the trial court stated that Mrs. Lindsey's weekly income should be calculated based on her working 30 hours per week, since none of the extra hours mentioned by Mrs. Lindsey were guaranteed. The trial court calculated Mrs. Lindsey's gross monthly income to be $747.50. Appellant asserts that Mrs. Lindsey's income should be calculated based on 33 hours per week for a gross monthly income of $815.92.
It is well settled that, where alimony awards are concerned, the trial court is vested with much discretion and that, on review, those awards will not be modified unless appellant can clearly demonstrate that the trial court abused its considerable discretion or committed manifest error in its factual determinations. Harper v. Harper, supra; Romero v. Romero, 463 So.2d 768 (La.App. 3rd Cir.1985), writ denied 465 So.2d 735 (La.1985); Buxton v. Buxton, 458 So.2d 606 (La.App. 3rd Cir.1984); Cunningham v. Cunningham, 448 So.2d 910 (La.App. 3rd Cir.1984).
As stated by the Louisiana Supreme Court in Pearce v. Pearce, 348 So.2d 75 (La.1977):
"In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge *1335 having observed the demeanor of the witnesses is in the better position to rule on their credibility. The factual findings of the trial court are therefore to be accorded very substantial weight on review." (citation omitted).
In the present case, the trial court felt that the use of 30 hours per week in calculating Mrs. Lindsey's income was appropriate because of the speculative nature of the possibility that she would work more than 30 hours in any given week. We cannot say that this was either an abuse of discretion or manifest error.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error appellant asserts that the trial court erred in failing to include real and potential interest income in its determination of the means available to Mrs. Lindsey for her support.
During the hearing on the rule for permanent alimony, Mrs. Lindsey stated that her checking account paid "a little interest" and that she "might get" $30.00 from that. Appellant asserts that this amount should have been included in Mrs. Lindsey's affidavit of income and expenses. Mrs. Lindsey also stated that in the partition of community property she received an $11,000.00 check, which she invested, through the firm of Merrill Lynch, in an IRA account and stocks. Mrs. Lindsey stated that due to a decline in the stock market, she hadn't yet earned anything on her investment. Appellant asserts that Mrs. Lindsey should be held to a standard of prudent investing, and, therefore, her income should be increased by the amount of interest she should be receiving on the $11,000.00 she received in the division of community property.
The record does not include the trial court's reasons for judgment, thus we cannot be sure of exactly what the trial court considered in calculating the means available for Mrs. Lindsey's support. However, from Mrs. Lindsey's testimony it is not clear how much interest she receives from her checking account or how often she receives it. Mrs. Lindsey stated that she had "a little bit" of money in her checking account, and, thus, she could only receive a minimal amount of interest at best. Further, the balance in a checking account may fluctuate quite a bit, making any calculation of monthly interest from it difficult and speculative. Even if the trial court failed to include this unknown amount of interest in calculating Mrs. Lindsey's means, we cannot say that this would amount to an abuse of its considerable discretion or would be manifest error.
Appellant cites the case of Darbonne v. Darbonne, 427 So.2d 558 (La.App. 3rd Cir.1983) in support of his assertion that the potential interest Mrs. Lindsey could be earning had she invested her $11,000.00 more prudently should be considered in the calculation of her means. Appellant's reliance on Darbonne for that proposition is misplaced.
In the Darbonne case, from the division of community assets, Mrs. Darbonne received a savings account with a balance of $37,799.00, which produced interest of approximately $400.00 per month. Mrs. Darbonne also received a cashier's check in the amount of $37,260.79, which she had neither cashed nor invested. The court stated that it was reasonable to assume that the amount represented by the cashier's check would earn a like amount of interest if invested by Mrs. Darbonne. The court found that her interest from these two investments, along with income from her other investments, would be approximately $1,000.00 per month, which would suffice for her maintenance without depleting any of her liquid assets. The court stated that, while the trial court recognized the means of the claimant spouse to include investment income, both real and potential, it did not consider that in making the award of alimony, and further, did not require any depletion of her liquid assets before making the award of permanent alimony. The *1336 court then held that, for those reasons, the trial court abused its discretion in awarding permanent alimony.
The court in Darbonne did not mention anything about holding the claimant spouse to a standard of prudent investing. The court merely stated that, because the amount represented by the claimant spouse's cashier's check was approximately equal to the amount of the balance she had in an interest-bearing account, it would be reasonable to assume that if the claimant spouse had invested the amount represented by the cashier's check in a similar account, it would earn approximately the same amount of interest. We are of the opinion that the court in Darbonne simply found that the trial court abused its discretion by disregarding potential interest that the claimant spouse knew she could earn and which she could have readily earned with the amount represented by the cashier's check, while at the same time not requiring the claimant spouse to deplete any of her liquid assets. In other words, the court was simply saying that the claimant spouse could not refrain from cashing or investing the large cashier's check, and then not have that asset count against her in calculating her means.
In the present case, Mrs. Lindsey received a much smaller liquid asset in the form of a check in the amount of $11,000.00. She invested the entire amount with an established and reputable firm. At the time of the hearing on this matter the investment had not yet produced any income because of a general decline in the stock market. This is not the same situation as if Mrs. Lindsey had simply refrained from either cashing or investing the check, as was the case in Darbonne, supra. Also, the record does not indicate whether the $11,000.00 was tied up in a long-term investment or whether Mrs. Lindsey would sustain a loss if the money was withdrawn from the investment. Even if this amount was considered to be a liquid asset, the jurisprudence requiring depletion of liquid assets before alimony can be awarded has only done so in cases where the claimant spouse had considerably larger amounts in liquid assets. Further, should the investment begin producing income in the future, appellant can file a rule for reduction of alimony payments. We cannot say that the trial court abused its considerable discretion or committed manifest error in failing to include potential interest from this investment in its calculation of Mrs. Lindsey's means.
For the foregoing reasons we find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment of error appellant asserts that the trial court erred in considering miscellaneous expenses and personal grooming expenses in determining the monthly amount needed for Mrs. Lindsey's support.
As previously stated in this opinion, the term "support" encompasses food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses, and the income tax liability caused by alimony. Harper, supra. However, that term does not encompass miscellaneous expenses or expenses for personal grooming. Kean v. Kean, 388 So.2d 398 (La.App. 1st Cir.1980); Litwin v. Litwin, 501 So.2d 843 (La.App. 4th Cir.1986), writ denied 502 So.2d 578 (La.1987).
As also previously stated in this opinion, the record does not include the trial court's reasons for judgment. Thus, we cannot be sure of precisely what the trial court considered in calculating the monthly amount needed for Mrs. Lindsey's support.
At the hearing on this matter, the trial court found Mrs. Lindsey's income to be $747.50 per month. As we have already stated, we cannot say that this was an abuse of discretion or manifest error. Mrs. Lindsey's affidavit reveals that based on a monthly income of $733.00 per month, her itemized deductions totaled $178.66 per *1337 month. Because such deductions include state and federal income tax, the total of itemized deductions would be greater on what the trial court found to be Mrs. Lindsey's income ($747.50) than on Mrs. Lindsey's income as set out in her affidavit ($733.00). Thus, after deductions, Mrs. Lindsey's net monthly income as determined by the trial court would amount to somewhat less than $568.84 ($747.50 minus $178.66).
In Mrs. Lindsey's affidavit, her claimed monthly expenses total $1,320.00. Her claimed miscellaneous expenses and personal grooming expenses add up to $120.00 per month. Since these expenses are not allowable in calculating Mrs. Lindsey's needs for her monthly support, that amount must be subtracted from her claimed monthly expenses of $1,320.00. Thus, the amount needed for Mrs. Lindsey's support equals approximately $1,200.00 per month.
Subtracting Mrs. Lindsey's net monthly income ($568.84) from her allowable monthly expenses ($1,200.00), leaves a balance of $631.16 worth of expenses needed for her support each month. Therefore, the trial court's award of $650.00 per month in alimony is in line with the monthly expenses of Mrs. Lindsey that may properly be considered under La.C.C. art. 160 in determining her need for support. The amount of alimony awarded reflects that the trial court did not improperly consider miscellaneous and personal grooming expenses in determining Mrs. Lindsey's need for support.
Appellant also asserts that Mrs. Lindsey owns her own home and has $11,000.00 in cash, and should, therefore, be required to deplete some of these assets before alimony can be awarded to her.
With regard to Mrs. Lindsey's home, which she received in the division of community assets, the record reveals that she assumed the mortgage on the home and pays a note of $380.00 per month on it. There is no evidence in the record as to the value of the home or what amount of equity Mrs. Lindsey has in the home. Courts have consistently held that only where large sums are tied up in extravagant housing will continued possession of a home by a claimant spouse be considered sufficient to defeat alimony. Duplantis v. Duplantis, 470 So.2d 480 (La.App. 1st Cir.1985); Hilton v. Hilton, 451 So.2d 90 (La.App. 3rd Cir.1984); Vorisek v. Vorisek, 423 So.2d 758 (La.App. 4th Cir.1982). Surely a home on which the monthly note is $380.00 cannot be considered extravagant housing by today's standards. Further, Mrs. Lindsey's continued possession of the home and payment of the notes will eventually benefit appellant in that when the mortgage on the home is paid off, Mrs. Lindsey will no longer have the $380.00 per month housing expense and appellant can file a rule for reduction of alimony payments on that basis.
As to appellant's assertion that Mrs. Lindsey has $11,000.00 in cash, as discussed in Assignment of Error No. 3 such is not the case. This money has been invested by Mrs. Lindsey and the jurisprudence does not require withdrawal of that money from investment and depletion of the resulting liquid asset.
For the foregoing reasons we cannot say that the trial court abused its discretion or committed manifest error by considering expenses not included under the term "support" in La.C.C. art. 160 and by not requiring Mrs. Lindsey to deplete her assets before she could be awarded alimony.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error appellant asserts that the trial court erred in fixing the amount of alimony at $650.00 per month. Although appellant acknowledges that his income is approximately $3,700.00 per month, he asserts that Mrs. Lindsey is working and able to support herself and that his expenses and tax liability *1338 are such that he is unable to pay $650.00 per month in alimony should this court affirm the trial court's finding that Mrs. Lindsey is in need of support. Appellant urges that under the criteria set forth in La.C.C. art. 160, the trial court's award of $650.00 per month in alimony was an abuse of its discretion.
Article 160 requires the trial court to consider the income, means, and assets of the parties. In our discussion of Assignment of Error No. 2, we found that the trial court's determination of Mrs. Lindsey's monthly income was not erroneous. In our treatment of Assignments of Error Nos. 3 and 4, we found that the trial court properly considered only those expenses for support that are allowed under Article 160 and the jurisprudence. Thus, we reached the conclusion that Mrs. Lindsey needed approximately $1,200.00 per month for her support and that her income only covered $568.84 worth of those expenses, leaving her with a need for support in the amount of $631.16 per month. We found that the trial court's award of $650.00 per month in alimony is reasonable and in line with Mrs. Lindsey's need for support. Therefore, appellant's assertion that Mrs. Lindsey is able to support herself is without merit.
We now turn to a consideration of appellant's income, means, assets, and financial obligations. Appellant's income is approximately $3,700.00 per month. In his affidavit appellant claims $2,313.67 in monthly expenses and $1,306.82 in itemized deductions. Subtracting these expenses and deductions from appellant's $3,700.00 monthly income leaves a total of $79.51. However, one of the items of expenses included in appellant's affidavit is his monthly payment of $735.00 for alimony pendente lite. This payment has been reduced to $650.00 per month by judgment of the trial court, which leaves appellant with a monthly income of $164.51 after subtracting his claimed expenses and deductions. Thus, it is apparent that appellant is able to pay the $650.00 per month in permanent alimony awarded by the trial court.
We note, also, that in the division of community assets, appellant received a house in Bunkie, Louisiana which has already been paid for in full. Although the house was not being rented at the time this matter was heard, appellant testified that he had rented the house in the recent past for $250.00 per month and was still offering it for rent at that same rate. Thus, appellant will very likely have an additional $250.00 per month of income.
Additionally, during the hearing on this matter, the trial court noted that appellant's claimed expenses and deductions include a $150.00 per month payment for life insurance policies on his major child and his two grandchildren. Also included is a $103.41 per month payment for a life insurance policy on himself which names Mrs. Rosalee Cameron, appellant's landlord and girlfriend, as beneficiary. With regard to these expenses the trial court stated that they weren't necessities and had nothing to do with the parties in this litigation. The court further stated that appellant's primary obligation is to himself and his former spouse. Thus, these unnecessary expenses were another circumstance properly considered by the trial court in making its award of alimony.
We cannot say that the trial court abused its discretion or committed manifest error in finding Mrs. Lindsey to be in need of income for her support in the amount of $650.00 per month and in ordering appellant to pay that amount. This assignment of error lacks merit.
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against appellant.
AFFIRMED.