596 So.2d 286 (1992)
Joan Davis KELLY, Plaintiff-Appellant,
v.
Harry C. KELLY, Jr., Defendant-Appellee.
No. 90-911.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Writ Denied June 19, 1992.
*287 Susan E. Kutcher, St. Martinville, for plaintiff-appellant.
Domengeaux & Wright, Colleen McDaniel, Lafayette, for defendant-appellee.
Before FORET and LABORDE, JJ., and PATIN[*], J. Pro Tem.
FORET, Judge.
This is an appeal by Joan Davis Kelly, plaintiff and appellant herein, from a judgment wherein she was denied permanent alimony on the basis that she committed post-separation fault, i.e., adultery.
Joan contends that the evidence was insufficient to prove that she committed adultery, barring her from permanent alimony.
We agree that the evidence is insufficient to show that Joan was at fault in causing the divorce. Nevertheless, we find that she has failed to prove that she is in necessitous circumstances. Therefore, although for different reasons, we affirm the trial court judgment denying Joan permanent alimony.

FACTS
Joan and Harry Kelly were married in Norfolk, Virginia in 1963, and subsequently established their domicile in Louisiana. One child was born of the marriage, who was of full age at the time of hearing.
Joan, appellant herein, filed a petition for separation based upon Mr. Kelly's cruel treatment and prayed for alimony pendente lite and permanent alimony. A judgment of separation, finding that Mr. Kelly "was not free from fault" and awarding Joan "$2,000 per month for two years as alimony," was rendered in October, 1986.
Joan thereafter filed a petition for divorce based upon six months living separate and apart since the judgment of separation and prayed for permanent alimony in the amount of $2,000 per month. Mr. Kelly, in his answer, admitted all of the allegations of the petition for divorce except he generally denied Joan's allegation that she was entitled to permanent alimony. He does not allege any grounds as to why she should be denied alimony.

DISCUSSION

A. FAULT
The Louisiana Supreme Court discussed the history of the jurisprudence regarding fault in Lagars v. Lagars, 491 So.2d 5 (La.1986), at page 7, as follows:
"This court has considered the issue of fault in a proceeding for alimony when the divorce is obtained on a no-fault basis. In Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959), we held that when a husband obtains an absolute divorce under La.R.S. 9:301, based on living separate and apart for a certain, specified period of time, and a wife seeks post-divorce alimony, the wife carries the burden of establishing that she was without *288 fault. See also Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir.1963)."
The Lagars court continued:
"In Fulmer v. Fulmer, 301 So.2d 622 (La.1974), the wife obtained a judicial separation based on the husband's fault (abandonment), and the husband obtained a divorce on a no-fault basis, by reason of the expiration of the statutory period following judicial separation, without reconciliation, under La.R.S. 9:302. This court held that where a judicial separation is decreed as caused by the fault of one spouse or the other, such fault as judicially determined to be the cause of the separation is normally determinative of the issue of whether the husband or wife is or is not at fault, for purposes of deciding whether the wife is entitled to alimony under art. 160. Thus, the husband in Fulmer was precluded from contesting his wife's right to post-divorce alimony, if she was in need, because of the judgment of separation in her favor based upon her husband's fault." Id. at p. 7.
The Fulmer court set forth an exception to the situation wherein a husband is precluded from contesting his wife's right to post-divorce alimony, as follows:
"Such a conclusion is, of course, not applicable if the divorce is sought for post-separation fault, such as adultery; for the sole effect of the separation judgment is a conclusive adjudication as to which spouse's pre-separation fault primarily caused the separation."
Fulmer v. Fulmer, 301 So.2d 622, 629 (La. 1974).
This exception was discussed in Lauro v. Lauro, 399 So.2d 1297 (La.App. 4 Cir. 1981), at page 1300, as follows:
"The language of Fulmer indicates that evidence of post-separation fault can be admitted if the party seeking to prove such fault seeks a divorce based on this fault." See also Florent v. Florent, 393 So.2d 912 (La.App. 4 Cir.1981).
Therefore, the general rule is that once a wife obtained a judicial separation based on the husband's fault and a divorce was later sought by reason of the expiration of the statutory period following judicial separation, without reconciliation, the husband was precluded from contesting his wife's right to post-divorce alimony.
The exception set forth in Fulmer, supra, and Lauro, supra, arose when a divorce was sought on the basis of post-separation fault, such as adultery. At this point, we note that the petition for divorce, filed by Joan in this action, was based on six months separate and apart since the judgment of separation, without reconciliation. There was no petition for divorce filed by Mr. Kelly based on adultery.
Subsequently, in Moon v. Moon, 345 So.2d 168 (La.App. 3 Cir.1977), writ denied, 347 So.2d 250 (La.1977), we found that evidence regarding post-separation fault would be allowed, as an affirmative defense, against a wife's claim for permanent alimony after the wife had obtained a judgment of separation on the basis of the husband's fault and later filed a suit for divorce on the basis of non-reconciliation for the prescribed time after separation.
In Moon, the wife obtained a judgment of separation on the grounds of her husband's cruelty. She later filed a suit for divorce based upon separation for over one year after the judgment of separation and prayed for alimony after divorce. Her husband, by answer and reconventional demand, averred that his wife was not free from fault because she committed adultery. His allegations of adultery, unlike in this case, were specific, stating the times, places, and circumstances of several acts of adultery, both before and after the judgment of separation. Pursuant to the wife's motion to strike, the trial court refused to allow litigation of either pre-separation or post-separation fault.
In reversing the trial court's ruling as to allowing evidence as to post-separation fault as a defense to the wife's claim for alimony after divorce, we stated, in pertinent part, as follows:
"In order to receive alimony, the wife must not have been `at fault'. La.C.C. Article 160. The word `fault' has been defined as `acts of commission or omission *289 on the part of the wife violative of her marital duties and responsibilities, which constitute a contributing or proximate cause of the separation and continuous living separate and apart, the grounds for the divorce.'"
* * * * * *
"Before the Fulmer case, it is clear that the wife's post-separation fault could be raised as a defense to her claim for alimony after divorce."
* * * * * *
"A careful analysis of the Fulmer case reveals that it was intended to effect only the issue of relitigation of pre-separation fault, not post-separation fault."
* * * * * *
"We do not think the law should force the husband to seek a divorce on the grounds of serious post-separation fault in order to avoid payment of alimony after divorce. Such a holding could encourage divorce and discourage reconciliation."
* * * * * *
"Evidence of the wife's fault, either before or after the judgment of separation, is irrelevant in an action for divorce under R.S. 9:302. Jones v. Floyd [154 So.2d 604 (La.App.1963) ]. Such a divorce will be granted regardless of the wife's fault. But if the wife makes a claim for permanent alimony in divorce proceedings under R.S. 9:302, evidence of her post-separation fault is relevant. Post-separation fault is an affirmative defense to the wife's claim for post-divorce alimony in such a case."
Moon v. Moon, at pages 172-174. (emphasis added)
As an affirmative defense[1], the burden of proving adultery is upon the spouse attempting to defeat the claim for alimony. As we stated in Rutherford v. Rutherford, 452 So.2d 432 (La.App. 3 Cir.1984), and as in this case, the wife conclusively carried her burden of proving herself free of preseparation fault by introducing the judgment of separation in her favor. Rutherford, at page 434, stated:
"We conclude that there is no affirmative burden on the part of the spouse found free of pre-separation fault in a prior separation judgment to prove his or her freedom from post-separation fault. Rather, we find that the spouse against whom alimony is sought bears the burden of proving post-separation fault on the part of the claimant spouse in order to defeat such claim."
A similar view was taken in Webster v. Webster, 308 So.2d 302 (La.App. 1 Cir. 1975), as quoted in Rutherford at page 435:
"... once a wife's freedom from fault has been determined in a separation proceeding, the only issue concerning fault of the wife in a subsequent divorce proceeding is whether the wife has been guilty of fault subsequent to the decree of separation. In such instances, it is incumbent upon the husband to establish the wife's fault subsequent to the separation decree."
This shifting of the burden of proof was again explained in Guillory v. Guillory, 490 So.2d 758, 761 (La.App. 3 Cir.1986), as follows:
"The spouse seeking alimony bears the burden of proving his or her freedom from fault in order to be entitled to alimony after divorce. Rutherford v. Rutherford, 452 So.2d 432 (La.App. 3rd Cir.1984). Once she introduced the judgment of separation, Blanche conclusively carried her burden of proving herself free of pre-separation fault. However, her freedom from post-separation fault is likewise a prerequisite to an award of alimony after divorce. Id. But proof of post-separation fault of the claiming spouse is the burden of the spouse *290 against whom alimony is sought. Id."[2]
Although Mr. Kelly did not allege adultery as an affirmative defense nor file a reconventional demand for divorce based upon adultery, the report of a private investigator hired by Mr. Kelly to watch Joan and inquiries regarding the relationship between Joan and a certain Harold Keating were allowed at trial without objection. As such, we presume that the pleadings were enlarged to include an affirmative defense of adultery on behalf of Mr. Kelly.
Joan testified on direct that she had rented a room in her home on two different occasions. The first occasion was when her father was ill in the hospital and she was staying with her mother, which left her home vacant. The record is unclear as to whether this tenant paid rent, but her second tenant, Harold Keating, paid $320 a month rent at Joan's home in Virginia Beach, Virginia. His tenancy continued from December of 1988 until approximately May of 1989, during which time he paid rent and a portion of the utilities. After an absence of four or five months, Keating returned in late October, 1989, while waiting for another rental to become available and was residing in Joan's home at the time of trial, in early December of 1989.
Joan testified that her relationship with Keating was not romantic but instead, primarily maternal insofar as Keating was 36 years old and Joan is 52 years old. The testimony revealed that Keating slept in the downstairs bedroom which he rents. In response to questioning, Joan stated that she has neither seen him undressed nor told anyone that they had other than a platonic relationship.
On cross-examination, she testified that Keating had not paid rent since he returned in October of 1989 because he was just getting back on his feet. She stated that he had a good job but was paying back medical bills. She testified that she and Keating had an agreement that when he is through paying his medical bills, a monthly plan will be set up whereby he will repay her for the utilities that he has used. He does buy his own groceries, they both cook, and sometimes they eat together.
She testified that Keating's apartment was to be ready the following month. She also testified that she had advertised for a female roommate, and about fifteen female candidates had looked at the room for rent. She testified that they did not rent it because the closet in her rental room was too small to hold their clothing.
Responding to cross-examination, she testified that Keating had gone to the movies twice with her and her mother; that she and Keating had walked on the beach together (her home is in Virginia Beach); and that she has given Keating a friendly hug and kiss in the past.
She testified that she had rented him the room after his inquiry (he was aware that her prior tenant had moved) and after she had checked on Keating with his employer. She also discussed it with her mother prior to renting him the downstairs spare room.
Still on cross-examination, she denied ever seeing Keating in a bathrobe or in his pajamas. In response to a question regarding Keating's automobile being registered at her house, she testified that, at the time he bought the car, he lived at her house.
Mr. Kelly testified on direct that he had no personal knowledge regarding either Joan's tenants or any knowledge of any romantic relationships involving Joan.
The defendant entered a report of a private investigator into evidence which reported the following events:
(1) On July 6, 1989, "[t]hey [Keating and Joan] sat in her car with her driving and seemed to be arguing. He got out and came around to the drivers side of the car, opened the door for her, at which time she shouted obscenities at him and he walked *291 toward the front door. At this time she threw an apple at him and he let himself in with a key. She slams the door and goes in...."
(2) "On August 28 [1989], we used a pretext to speak to the subject about [Keating's] the car being for sale since it has not moved. She stated that the `man of the house' and owner of the car was out to sea and we would have to come back."
(3) On September 15 [1989], "[a]t 9:29 PM the AMC returns and subjects [Keating and Joan] go in. At 12:15 AM now Saturday the 16th, all lights go out and remain out until 1:30 AM, at which time they come on for 15 minutes. From 1:45 AM until 7:00 AM there is no other activity observed and no one enters or leaves the home. At 7:40 AM the subject [Joan], wearing glasses, an oversized Sweater-shirt and peach pants, walks to the door with the suspect [Keating], who has on a dark colored robe."
As stated recently by the Second Circuit in Emfinger v. Emfinger, 550 So.2d 754, 758 (La.App. 2 Cir.1989):
"Adultery may be proved by direct or circumstantial evidence. When circumstantial evidence is relied upon to establish adultery, the evidence must fairly and necessarily lead to the conclusion that adultery has been committed. The evidence is to be viewed in light of "experiences and observations of life." The fact that a man and a woman are alone together does not necessarily justify presuming that it is for a romantic or sexual purpose."
In determining whether Mr. Kelly has carried the burden of proving that his wife committed adultery, we initially note that there has been no accusation by Mr. Kelly, either in the pleadings or at the trial, that his wife committed adultery. Additionally, we note that there is no direct testimony evidencing that Joan committed adultery. The husband testified that he had no personal knowledge of any romantic relationship between Joan and anyone, and Joan denied any intimate relationship with Keating.
The private investigator witnessed an argument, an apple being thrown, and a man spending the night in a house where he rented a room for the better part of a year. In fact, the private investigator's report is consistent with Joan's testimony that her income had been enhanced by the $320 per month which Keating paid in rent. Renting a room to a person of the opposite sex, in and of itself, is not proof of adultery. See Karl v. Karl, 191 So.2d 674 (La.App. 2 Cir.1966); Florent v. Florent, 393 So.2d 912 (La.App. 4 Cir.1981); Wynn v. Wynn, 513 So.2d 489 (La.App. 2 Cir.1987).
Under the standard set forth in the jurisprudence above and in light of the evidence presented, we find that the trial court erred in finding this evidence sufficient to prove adultery and post-separation fault on the part of Joan[3]. Even assuming arguendo that Joan's credibility was put at issue, there was no allegation or accusation by anyone to rebut her statement that Keating was merely a young man to whom she rented a room in her home. We can only presume that the private investigator's report was entered into evidence in an attempt to prove adultery. Mr. Kelly has neither alleged adultery nor had any personal knowledge regarding any adultery on Joan's part.
As such, we reverse the trial court's finding of post-separation fault on the part of Joan Kelly, not as an erroneous factual finding, but on the basis of a misplaced burden of proof. Rather than Joan failing to prove she was free from fault, Mr. Kelly has failed to prove that Joan committed post-separation fault.
B. NECESSITOUS CIRCUMSTANCES
As this Court stated in Buxton v. Buxton, 458 So.2d 606, 762 (La.App. 3 Cir. 1984):

*292 "Alimony after divorce is only due if the spouse seeking it proves that he or she is without fault and in necessitous circumstances. Frederic v. Frederic, 302 So.2d 903 (La.1974). The spouse who demonstrates a need for permanent alimony is only entitled to an amount sufficient to provide for his or her maintenance. Ward v. Ward, 339 So.2d 839 (La.1976). Those items which are encompassed by the term "maintenance" are: food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses and the income tax liability caused by alimony. Loyacano v. Loyacano, 358 So.2d 304 (La.1978), vacated on other grounds, 440 U.S. 952, 99 S.Ct. 1488, 59 L.Ed.2d 766 (1979), affirmed on remand, 375 So.2d 1314 (La.1979)."
Essentially, a spouse desiring permanent alimony must prove that she is in need of an award of alimony[4]. The record in this case is sufficiently complete for us to make this determination. Joan submitted an affidavit showing that her income was $725 per month and that her needs were $2,240 per month, leaving her a deficit of $1,515 per month[5].
Permanent alimony is intended to cover only basic necessities. With this in mind, her needs in her affidavit are reduced by $585, which includes a reduction for those expenses for personal and grooming necessities, fixed obligations (finance company, bank loan, etc.), entertainment expenses, and taxes incurred in connection with alimony. See Lindsey v. Lindsey, 546 So.2d 1332 (La.App. 3 Cir.1989). Deducting this amount of $585 from a prior deficit of $1,515, leaves her with a deficit of $930.
Evidence was also presented to show that she has a room in her home which she is able to rent for $320 per month to help with expenses which, with a corresponding rise in utilities for an additional person, would boost her income by approximately $200 per month, or reduce her deficit to $730 per month.
Additionally, Joan testified that she has approximately $23,000 in checking which, if invested, could decrease her monthly deficit by approximately $125 per month, leaving a deficit of $605 per month.
Joan also has an IRA account which has a balance of approximately $115,000. At trial, defendant submitted a report by an accountant who testified, pursuant to the Internal Revenue Code, that Joan could withdraw, without penalty, approximately $10,100 per year or $850 per month without invading the principal of this IRA account. This financial move would leave Joan with a surplus of approximately $250 per month.
Finally, Joan received a $10,000 gift from her mother in 1989, which provided a substantial increase to her income. We also note that Joan received $2,000 per month in alimony pendente lite for twenty-four months prior to her divorce, totaling $48,000. She also had $27,000 equity in her home valued at $65,000 and owns its furnishings and an automobile.
Reviewing the above, we do not find that Joan has carried her burden of proving that she is in necessitous circumstances and, as such, deny an award of permanent alimony.

CONCLUSION
Based on the foregoing, we reverse the finding of the trial court which held that Joan had committed post-separation fault. We find that Joan Davis Kelly is free from post-separation fault in causing the divorce between the parties.
We affirm the judgment of the trial court in denying Joan permanent alimony insofar as we find that she is not in necessitous circumstances and thus, is not entitled to permanent alimony. Costs of this appeal are to be divided equally between the parties.
*293 REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[*] Judge John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] "5. The listing of the named affirmative defenses in La.Code Civ.P. art. 1005 is merely illustrative. Webster v. Rushing, 316 So.2d 111 (La.1975). The defendant who pleads an affirmative defense has the burden of proving it by a preponderance of the evidence. A Better Place, Inc. v. Giani Investment Co., 445 So.2d 728 (La.1984)."

Lagars v. Lagars, 491 So.2d 5, 8 n. 5 (La.1986).
[2] The trial court, in its judgment finding that Joan committed post-separation fault, stated that, "[t]he mover in a rule for permanent alimony has the burden of proving that he or she is free from fault." It appears that the trial court incorrectly found that Joan had the burden of proving a negative, i.e., that she did not commit adultery or any other form of fault rather than, under the facts of this case, more properly placing the burden of proving postseparation fault on the spouse against whom alimony was sought.
[3] We note that this expansion of the pleadings which allowed evidence as to Joan's morality placed her in the position of coming to Louisiana from her home in Virginia in pursuit of a divorce based upon six months from judgment of separation without reconciliation, to which her husband answered with a general denial, only to be encountered by questions at trial as to her morality. Even the pre-trial discovery included no allegations or inferences as to any claim of adultery.
[4] Mr. Kelly's ability to pay permanent alimony, if awarded, was stipulated to at trial.
[5] This income included amounts earned from the sale of her artwork and from a part-time job.